## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANDREW P. MOORE,**<br><br>**Plaintiff,**<br><br>v.<br><br>**JULIAN CASTRO, Secretary, U.S. Department of Housing and Urban Development, et al.**<br><br>**Defendants.** | **Civil Action No. 14-2109 (JDB)** |

## MEMORANDUM OPINION

Andrew Moore, an African-American man over 62 years old, alleges that his former employer, U.S. Department of Housing and Urban Development ("HUD"), took dozens of adverse actions against him because of his race, gender, and age, as well as in retaliation for filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). The alleged discrimination and retaliation occurred in 2014 during Moore's brief employment and culminated in Moore's termination. HUD responds that none of Moore's nine causes of action (which include claims against HUD employees in their individual capacities) state a claim upon which relief can be granted. And even if they do, HUD moves for summary judgment in the alternative. The Court will grant defendants' motion to dismiss all of Moore's claims against the individual defendants and grant in part the motion to dismiss Moore's claims against HUD. Moore has stated a claim based on certain discrete acts—including his termination—for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. He has also

sufficiently alleged a claim for hostile work environment.   However, only his hostile work environment claim under the ADEA survives HUD's alternative motion for summary judgment.

## FACTUAL BACKGROUND

Moore's narrative begins with his selection as a Presidential Management Fellowship (PMF) Finalist by the Office of Personnel Management.[1]  Am. Compl. [ECF No. 12] ¶ 27.  The PMF program is an entryway into federal government employment for individuals who have recently received advanced degrees.  See 5 C.F.R. § 362.403(b).  Agencies may consider finalists for appointment to two-year positions.  See id. §§ 362.403(f), 362.404(a).

On March 10, 2014, believing that, as a PMF finalist, he had been offered a management position commensurate with his business education background, Moore attended a job fair in Washington, D.C., where federal agencies conducted interviews to recruit and hire PMF finalists for two-year positions.  See Am. Compl. ¶ 28.  Moore was interviewed by a recruiter from HUD for a "management position" at the agency's regional office in Fort Worth, Texas.  Id.  According to Moore, the responsibilities of the position included the management of HUD housing grants and vouchers.  Id.  He "was extremely happy and elated for this wonderful opportunity to train [and] work in management and had great expectations of continued employment with the Federal Government."  Id. ¶ 29.  But those great expectations were soon dashed.

On March 19, 2014, Moore received a "tentative job offer" from HUD for the position of "Presidential Management Fellow (PMF)."  Id. ¶ 30.  He was then presented with a "firm job offer" as a construction specialist compensated at GS 11, which he accepted, believing it to be his "targeted position."  Id. ¶¶ 33, 35.  He began work at HUD on April 21, 2014.  Id. ¶ 36.  But instead

---

[1] Unless otherwise indicated, these facts are as alleged by Moore.  The Court has done its best to distill Moore's version of events from his complaint, which often blends facts with legal conclusions, jumps backward and forward in time, and is rife with internal inconsistencies.

of a management position, Moore was assigned to work as a building inspector—a job for which he had no background or qualifications. See id. ¶¶ 46–47. And while Moore, who has an extensive background in business administration, was pressed into service as a building inspector, other PMF employees, with less management experience, were assigned a higher pay grade. Id. ¶ 43.

Moore now contends that HUD singled him out and intentionally discriminated against him by "deceiv[ing] him into believing that he would be offered a legitimate Presidential Management Fellow position." Id. ¶ 126(a). Instead, he asserts, the government extended to him a fraudulent job offer for a position that did not exist. Id. ¶ 34. Then, once Moore had accepted the offer, the government pushed him into a "construction analyst" position, id. ¶ 36, where it continued its discriminatory campaign. Id. ¶¶ 60, 65. Having deceived Moore into accepting a position for which he was unqualified, HUD "used its UPCS [Uniform Physical Condition Standard] Inspection Certification Training Program as a tool to discriminate against Moore." Id. ¶ 47.

HUD also allegedly isolated Moore from other PMF employees in myriad ways. For example, HUD refused to issue Moore an "official acceptance letter," prevented him from attending scheduled PMF events and activities, and forced him to travel and work "out in the field." Id. ¶ 60. In the meantime, HUD treated PMF employees who were female, not African American, and younger than Moore more favorably—by not taking these same actions against them. Id. ¶¶ 61, 66. Moore also suffered at the hands of his supervisors. Defendant Brian Ruth, Moore's second line supervisor, "shouted" at him on his first day at work. Id. ¶¶ 72, 84. Defendant Dilip Patel, Moore's first line supervisor, "verbally reprimanded, humiliated, degraded and embarrassed Moore in front of a building inspector and others." Id. ¶¶ 72, 86. And defendant Jose Bosque-Perez "escalated the situation to the point where Moore began crying." Id. ¶ 92.

On June 10, 2014, Moore complained that other PMF employees were receiving better treatment than he was and that he was being subjected to a hostile work environment.  Id. ¶ 70.  But things did not improve; they got worse.  Moore's first and second line supervisors and the HUD PMF coordinator "refus[ed] to assist him to complete an IDP [individual development plan]" such that Moore was forced to complete his IDP alone.  Id. ¶¶ 72–73.  It was subsequently rejected.  Id. ¶ 73.  And rather than execute a written PMF Participant Agreement for Moore, his supervisors provided him with a "virtually blank Participant Agreement form that contained no input" from his supervisors or human resources.  Id.  In addition, in July 2014, rather than transfer Moore from what he complained was a hostile work environment, HUD forced him to work from home.  Id. ¶ 76.  Moreover, from June through September, Patel, Ruth, and defendant Delton Nichols "made offensive and insulting remarks or comments suggesting that Moore worked too slow, suffered from memory loss, had a learning inability, and could not sufficiently comprehend the exercises in the UPCS Inspection Certification Training because of his age."  Id. ¶ 88.

The situation finally culminated in Moore's discharge from employment on September 24, 2014.  Id. ¶ 107.  Moore alleges that his Notice of Termination "is inundated with false trumped-up charges," including that Moore engaged in misconduct, failed to read his emails and weekly assignments, was observed sleeping on duty, failed to follow instructions, did not contact his supervisors for assistance, and did not display a positive attitude.  Id. ¶ 113.  According to Moore, HUD retained other PMF employees who were female, younger, and not African American.  Id. ¶ 108.

## PROCEDURAL BACKGROUND

On October 29, 2014, and November 12, 2014, Moore filed two formal Equal Employment Opportunity (EEO) complaints charging HUD with race and sex discrimination, retaliation, hostile

work environment, and discriminatory and retaliatory discharge.  Id. ¶ 19.  He raised his age discrimination claim with the EEOC on October 16, 2014, when he filed a notice of intent to sue. Id. ¶ 17.  Believing his administrative remedies to be exhausted, Moore now brings this federal lawsuit.  His amended complaint alleges nine causes of action.  The first five allege that HUD Secretary Julian Castro (hereinafter, HUD) discriminated against Moore based on his age, gender, and race, and retaliated against him in violation of the ADEA and Title VII.  Specifically, Counts I and II allege a list of twenty-four discriminatory actions taken against Moore.  Count III asserts retaliation based on many of the same discrete incidents.  Count IV asserts a discriminatory and retaliatory hostile work environment.  And Count V claims that Moore's termination was also discriminatory and retaliatory.

His other causes of action allege that nine individual defendants: conspired to obstruct justice in violation of 42 U.S.C. § 1985(2) (Count VI); conspired to deprive Moore of his rights and privileges in violation of 42 U.S.C. § 1985(3) (Count VI); and engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) (Count VIII).  Moore also brings suit against four of these individuals for "negligence to prevent conspiracy" in violation of 42 U.S.C. § 1986 (Count VII).

On August 11, 2015, the defendants filed the motion to dismiss or, in the alternative, for summary judgment that is now before the Court.  They sought to dismiss all nine counts of the complaint either under Rule 12(b)(6) for failure to state a claim or under Rule 56 on summary judgment.  Plaintiff has opposed the motion, and has complained generally that he has not yet had the opportunity to undertake discovery.  He also has filed a motion to disqualify the presiding judge.

## ANALYSIS

The Court must begin by resolving Moore's motion for disqualification.  Concluding that recusal is not warranted, the Court will go on to assess whether Moore's complaint states a claim that survives HUD's 12(b)(6) motion to dismiss.  Upon identifying those claims that survive 12(b)(6) dismissal, the Court will proceed to determine whether summary judgment is proper.

## I.    Motion to Disqualify

Moore filed a motion to disqualify the undersigned judge from further involvement in this matter.  That motion, opposed by defendants, focuses on three incidents: (1) the Court's "scathing admonition" of Moore at a status conference; (2) the Court's denial of Moore's motion for a discovery conference while a dispositive motion was pending; and (3) the Court's striking of his surreply.  Pl.'s Mot. to Disqualify [ECF No. 53] at 1–2.

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  No "reasonable and informed observer" would question this Court's impartiality based on the Court's statements in open court at the June 10, 2015, status conference.  See United States v. Cordova, 806 F.3d 1085, 1092 (D.C. Cir. 2015) (internal quotation marks omitted).  In advance of that status conference, Moore submitted emails sent between opposing counsel and himself.  Pl.'s Notice of Filing Docs. [ECF No. 14] at 1–2; see Ex. E to Pl.'s Notice of Filing Docs. [ECF No. 14-5] (accusing government counsel of harassment, intimidation, and an attempt to corrupt the court).  Having viewed the content of those exhibits, the Court expressed concern about their tone.  See Tr. [ECF No. 56] at 4:22–5:18.  The Court encouraged Moore "to be civil," show "respect and courtesy," avoid "accusations and other hyperbole," and "be mindful of what the other side is charged with doing."  Id.  This exchange does not suggest that the Court's impartiality might reasonably be questioned.  See Liteky v.

<u>United States</u>, 510 U.S. 540, 555 (1994) ("[J]udicial remarks . . . that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."); <u>accord</u> <u>Czekalski v. LaHood</u>, 589 F.3d 449, 457 (D.C. Cir. 2009).  Nor can the judicial rulings in this case form the basis for a recusal motion.  <u>See</u> <u>Liteky</u>, 510 U.S. at 555 ("[J]udicial rulings alone . . . can only in the rarest circumstances evidence the degree of favoritism or antagonism required" for recusal.); <u>accord</u> <u>United States v. Hite</u>, 769 F.3d 1154, 1172 (D.C. Cir. 2014).  The Court will therefore deny Moore's motion for disqualification.

## II.   <u>Motion to Dismiss</u>

### A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  At this stage, the Court must assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in plaintiff's favor.  <u>Sissel v. U.S. Dep't of Health & Human Servs.</u>, 760 F.3d 1, 4 (D.C. Cir. 2014). But the Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint.  <u>Trudeau v. FTC</u>, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)).  Although a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  <u>Twombly</u>, 550 U.S. at 555–56 (internal quotation marks omitted).

Before assessing Moore's complaint, it is important to note that <u>pro se</u> parties generally deserve leeway in their pleadings.  <u>See, e.g.</u>, <u>Richardson v. United States</u>, 193 F.3d 545, 548 (D.C. Cir. 1999) ("Courts must construe <u>pro se</u> filings liberally."); <u>Voinche v. FBI</u>, 412 F. Supp. 2d 60, 70 (D.D.C. 2006) ("This Court gives <u>pro se</u> parties the benefit of the doubt and may ignore some technical shortcomings of their filings.").  HUD argues that Moore is not entitled to this benefit of the doubt given his extensive litigation experience.[2]  Defs.' Mem. in Supp. of Mot. to Dismiss [ECF No. 24-2] at 8–9.  HUD, however, cites no authority for the proposition that a litigious <u>pro se</u> litigant should be treated differently from other <u>pro se</u> parties.  The Court therefore will construe Moore's complaint under the liberal standard that governs <u>pro se</u> complaints.  <u>See</u> <u>Sparrow v. Reynolds</u>, 646 F. Supp. 834, 836–37 (D.D.C. 1986) ("A <u>pro se</u> litigant, even one as experienced as plaintiff, is entitled to have his complaint construed most liberally.").  Of course, a <u>pro se</u> complaint must still "present a claim on which the court can grant relief." <u>Chandler v. Roche</u>, 215 F. Supp. 2d 166, 168 (D.D.C. 2002).  Here, the Court "is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record." <u>Felder v. Johanns</u>, 595 F. Supp. 2d 46, 58 (D.D.C. 2009) (citing <u>EEOC v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C. Cir. 1997)).

## B.    Moore's Claims Against Individual Defendants

The Court will begin with the easier task of addressing Moore's claims against individual defendants.  These claims are meritless auxiliary attempts to pursue what is really an employment

---

[2] Moore has filed at least eight prior lawsuits.  <u>See</u> Defs.' Mem. in Supp. of Mot. to Dismiss [ECF No. 24-2] at 8 (citing <u>Moore v. Potter</u>, No. 3:04-CV-1057-J-32HTS, 2006 WL 2092277, at * 1 (M.D. Fla. July 26, 2006), where the court noted that Moore had filed seven prior lawsuits at that time).

discrimination lawsuit.  Title VII is the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." Brown v. Gen. Servs. Admin., 425 U.S. 820, 829 (1976); see Rogler v. Biglow, 610 F. Supp. 2d 103, 105 (D.D.C. 2009) (holding Title VII is the exclusive "remedy for federal employees who are retaliated against for participating in EEOC proceedings").  Because Title VII is the exclusive remedy for federal employment discrimination or retaliation, it is clearly established that aggrieved individuals cannot pursue redress for these harms under 42 U.S.C. § 1985(3), which provides a civil cause of action against persons who conspire to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." Great Am. Fed. Savs. & Loan Ass'n v. Novotny, 442 U.S. 366, 378 (1979).  Moore's § 1985(3) claim therefore cannot proceed as a matter of law.

The Court sees no reason why the same logic should not bar Moore's other claims against the individual defendants.  See Ethnic Emps. of the Library of Congress v. Boorstin, 751 F.2d 1405, 1415 (D.C. Cir. 1985) ("[F]ederal employees may not bring suit under the Constitution for employment discrimination that is actionable under Title VII."); Brug v. Nat'l Coal. for the Homeless, 45 F. Supp. 2d 33, 42 (D.D.C. 1999) (holding that federal employee was precluded from bringing claims of constitutional violations under § 1983); see also Brown v. Potter, No. 4:05-CV-584 (CEJ), 2006 WL 416066, at *2 (E.D. Mo. Feb. 21, 2006) (dismissing all claims, including RICO claims, brought by plaintiff under any statute or law other than Title VII).  But even if this doctrine did not extend to Moore's claims under 42 U.S.C. §§ 1985(2) and 1986, and 18 U.S.C. § 1962(c), those claims must still be dismissed on alternate grounds.[3]

---

[3] The Court recognizes that the individual defendants have argued in the alternative that the Court lacks personal jurisdiction over them. Defs.' Mem. at 35–37.  Nevertheless, the Court determines that "the interest of judicial economy is served by reaching the merits of [Moore's] claims . . . rather than delaying the inevitable" by allowing him to file another lawsuit containing the same meritless claims.  McManus v.

### 1.   *Claim under § 1985(2)*

The first clause of § 1985(2) "prohibits conspiracies to interfere with the integrity of the federal judicial system." McCord v. Bailey, 636 F.2d 606, 614 (D.C. Cir. 1980).  To state a claim under this provision of § 1985(2), "a plaintiff must allege (1) a conspiracy between two or more persons, (2) to deter a party, witness or juror from attending or testifying in any matter pending in any court of the United States, which (3) results in injury to the plaintiff." Graves v. United States, 961 F. Supp. 314, 319 (D.D.C. 1997).

Moore alleges broadly that defendants conspired to "deter him by intimidation and retaliation from attending this court and testifying to the matters of this case freely, fully, and truthfully, injure in his person or property for having attended these court proceedings, and to obstruct, impede or hinder the due course of justice."  Am. Compl. ¶ 123.  Few factual specifics are offered.  These conclusory allegations are insufficient to state a claim.  See Iqbal, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting Twombly, 550 U.S. at 555)).  The only specific allegations that vaguely relate to any obstruction of justice arise in the context of Moore's EEO administrative proceeding.  Am. Comp. ¶ 126(k).  But "administrative proceedings under Title VII do not constitute a court proceeding for the purposes of § 1985(2)." Graves, 961 F. Supp. at 319–20.  The Court will therefore dismiss this claim.

### 2.   *Claim under § 1986*

Section 1986 imposes civil liability on anyone who knowingly fails to prevent the commission of a conspiracy prohibited by § 1985.  42 U.S.C. § 1986.  Thus, a § 1986 claim is derivative of a § 1985 claim.  A plaintiff who has not stated a claim under § 1985 has no basis for

---

District of Columbia, 530 F. Supp. 2d 46, 68 (D.D.C. 2007); cf. Simpkins v. District of Columbia, 108 F.3d 366, 369–70 (D.C. Cir. 1997).

relief under § 1986.  Wilson v. U.S. Dep't of Transp., 759 F. Supp. 2d 55, 62–63 (D.D.C. 2011);

see Herbin v. Hoeffel, No. 99–7244, 2000 WL 621304, at *1 (D.C. Cir. Apr. 6, 2000) (per curiam).

Having dismissed Moore's § 1985 claim, the Court must also dismiss his § 1986 claim.

### 3.    *RICO claim*

To survive a Rule 12(b)(6) motion to dismiss, plaintiffs bringing a § 1962(c) claim must

allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  W.

Assocs. Ltd. P'ship v. Mkt. Square Assocs., 235 F.3d 629, 633 (D.C. Cir. 2001) (internal quotation

marks omitted).  Among the predicate acts constituting "racketeering activity" under § 1962(c) are

mail fraud and wire fraud.  See 18 U.S.C. § 1961(1).  Moore claims that a group of HUD employees

constituted an enterprise that operated with the purpose to defraud Moore, committing "at least

seven predicate acts": mail fraud, wire fraud, honest services fraud, involuntary servitude,

tampering with a party, obstruction of federal court proceedings, and use of the mails to carry out

unlawful activity.  Am. Compl. ¶¶ 136–144.  Specifically, he alleges, defendants "devised multiple

schemes . . . to defraud Moore" by, among other things, presenting him with a fraudulent firm job

offer, placing him in a non-management position, preventing him from working at his duty station,

and forcing him into involuntary servitude.  Id. ¶ 146.

HUD responds that Moore's "attempt to fit the everyday tribulations of employment . . .

into the rubric of a RICO claim is ridiculous" and concludes that the "cause of action is frivolous."

Defs.' Reply [ECF No. 40] at 28–29.  The Court agrees that Moore's RICO claim cannot survive.

"Congress enacted § 1962(c), and RICO generally, 'to target . . . the exploitation and appropriation

of legitimate business by corrupt individuals.'"  Bates v. Nw. Human Servs., 466 F. Supp. 2d 69,

78 (D.D.C. 2006) (quoting Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union

639, 883 F.2d 132, 139 (D.C. Cir. 1989)).  Moore's lawsuit has nothing to do with an injury to his

commercial business.  It has everything to do with an employment-related injury.  The remedy for Moore's complaints is Title VII, and his attempt to shoehorn his discrimination and retaliation claims into a RICO claim is unavailing.  Hence, his RICO claim will be dismissed.

Moreover, the RICO claim fails because Moore has not sufficiently pled a pattern of racketeering activity.  Among the factors courts consider when evaluating whether the plaintiff has established such a pattern are "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity."  Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (internal quotation marks omitted).  When defendants are accused of engaging in "a single scheme" with a "single injury[] and few victims" it is "virtually impossible for plaintiffs to state a RICO claim."  Id.  Moore has pleaded a "pattern" consisting of a single alleged scheme (to prevent Moore from participating in and completing the PMF program); a single injury (Moore's loss of his PMF position and related benefits); and a single victim (Moore).  Even taking all of plaintiff's assertions as true, and assuming that he adequately pleaded the required predicate acts, he still has failed to plead a pattern of racketeering activity. See E. Sav. Bank, FSB v. Papageorge, 629 F. App'x 1, 2 (D.C. Cir. 2015).

### C.    Moore's Claims Against HUD

The Court is thus left with the core of Moore's lawsuit—his claims that HUD took retaliatory and discriminatory action against him in violation of Title VII and the ADEA.  Recall that Moore alleges disparate treatment because of age in violation of the ADEA (Count I); disparate treatment because of race and sex in violation of Title VII (Count II); retaliation in violation of Title VII and the ADEA (Count III); discriminatory and retaliatory hostile work

environment in violation of Title VII and the ADEA (Count IV); and discriminatory and retaliatory discharge in violation of Title VII and the ADEA (Count V).

### 1.   *Exhaustion*

Before suing under either Title VII or the ADEA, an aggrieved party must exhaust his administrative remedies.   Washington v. Wash. Metro. Area Transit Auth., 160 F.3d 750, 752 (D.C. Cir. 1998).   HUD argues that several of Moore's claims have not been properly exhausted. Defs.' Mem. at 17–18.   Some, HUD argues, were presented to the EEOC, but not in compliance with the statutory deadlines.   Others, HUD asserts, were not presented to the EEOC at all.

Under Title VII, a federal employee has 45 days from the date of the matter alleged to be discriminatory or retaliatory to make contact with an EEOC counselor and 180 days from the filing of the initial charge to file an official charge.   See 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.105(a)(1).   Under the ADEA, a federal employee may bring the claim directly to federal court if he gives at least 30 days' notice to the EEOC of his intent to sue and files that notice within 180 days after the alleged discriminatory conduct.   29 U.S.C. § 633a(d); Proud v. United States, 872 F. 2d 1066, 1067 (D.C. Cir. 1989).

Importantly, an employee must exhaust the administrative process for each discrete act for which he seeks to bring a claim.   See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113–15 (2002); see also Colton v. Clinton, Civ. No. 09-1772, 2010 WL 3940994, at *3 (D.D.C. Sept. 27, 2010) (notice of intent to sue must include allegation of "discrete act" at issue).   In Morgan, the Supreme Court held that discrete discriminatory acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges.   Each discrete discriminatory act starts a new clock for filing charges alleging that act."   536 U.S. at 113.   Excluding his termination, Moore has listed twenty-four separate acts that he alleges constituted unlawful discrimination on

the basis of age, gender, and race.  He has listed these incidents alphabetically, (a) through (x).  In order to account for the many discriminatory acts alleged, the Court will employ Moore's labeling throughout this opinion.

Determining whether Moore exhausted the administrative process for each of these acts requires separate analysis of Moore's Title VII claims (Count II) and his ADEA claims (Count I) because he pursued two different administrative processes.

a.      Title VII claims

"A plaintiff's purported failure to exhaust administrative remedies is analyzed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim."  Bowe-Connor v. Shinseki, 845 F. Supp. 2d 77, 85 (D.D.C. 2012).  The government contends that the Court should dismiss twelve of Moore's claims alleging race and gender discrimination because they were not timely presented to the EEOC and six more because they were "never presented."  Defs.' Mem. at 17–18.

Moore first contacted HUD's EEO Office on July 18, 2014.  Am. Compl. ¶ 71.  Hence, any discriminatory action that occurred before June 3, 2014—45 days prior to July 18, 2014—was not timely presented to the EEO Office.  According to HUD, this includes Moore's claims arising out of his "fraudulent" job offer, [4] which occurred on April 8, 2014.

But HUD has not accounted for Moore's allegation that it was not until April 21, 2014, that he began to realize that he had not in fact been hired for his "target" position.  Am. Compl. ¶ 36. And it was a week after that, on April 28, when Moore was explicitly informed that he was being

---

[4] In particular: claim (b) that HUD presented Moore with fraudulent tentative and firm job offers; claim (d) that HUD refused to issue Moore an official acceptance letter; claim (e) that HUD refused to assign Moore to a GS level pay grade consistent with his qualifications; claim (k) that HUD forced Moore into a Quality Assurance Inspector position; claim (j) that HUD refused to assign Moore responsibilities that were consistent with his qualifications; and claim (l) that HUD assigned Moore responsibilities that were inconsistent with his qualifications.  Am. Compl. ¶ 60.

tasked with the position of a building inspector, "which required a solid background, knowledge, and extensive experience in conducting building inspections." Id. ¶ 87. These dates are relevant because the 45-day time period only "begins to run when an employee has a reasonable suspicion of a discriminatory action." Adesalu v. Copps, 606 F. Supp. 2d 97, 102 (D.D.C. 2009) (internal quotation marks omitted); see 29 C.F.R. § 1614.105(a)(2); see also Stewart v. Ashcroft, 352 F.3d 422, 425–26 (D.C. Cir. 2003). But even giving Moore the benefit of the later date—at which point he knew or should have known about the alleged discriminatory action—the result is the same because April 28 is also outside the 45-day time frame. Hence, Moore's claims arising out of the April 8 fraudulent job offer were untimely filed and are time-barred. Moore's other claims arising out of discrete events on April 21, April 28, May 12, and May 20 were similarly untimely filed with the EEOC.[5]

HUD further asserts that Moore failed to exhaust six of his claims of race and gender discrimination—largely grievances related to training and Moore's individual development plan—because the underlying acts were never presented to the EEOC. Only those claims that are contained in the administrative complaint can be raised in a Title VII lawsuit. See Nurriddin v. Goldin, 382 F. Supp. 2d 79, 92–93 (D.D.C. 2005) (dismissing claims that were not raised before the EEOC), aff'd, 222 Fed. App'x 5 (D.C. Cir. 2007). Having reviewed Moore's EEOC

---

[5] In particular: claim (f) that HUD ordered Moore to never report to his duty station, which occurred on April 21, 2014, Am. Compl. ¶ 83; claim (t) that HUD forced Moore to travel to Georgia and work out in the field, which occurred during the week of April 28, 2014, id. ¶ 86; claim (s) that HUD forced Moore to travel thousands of miles back and forth from Texas to Washington, D.C., which occurred prior to May 18, 2014, id. ¶ 91; claims (u) and (v) that HUD prevented Moore from attending scheduled PMF events and isolated him from his fellow PMFs, which arise out of events that occurred on May 12, 19, and 20, 2014, id. ¶¶ 89, 92. Contrary to the government's argument, these unexhausted claims do not include claim (w) that HUD ordered Moore to work from home against his will, which he alleges occurred in July 2014. Id. ¶ 76.

complaints,[6] the Court agrees with the government for the most part and will dismiss five of these six claims.[7] Claim (o), however, that HUD discriminated against Moore when it refused to assign him a mentor in management, was presented to the EEOC. See Ex. 41 to Pl.'s Opp'n to Defs.' Mot. to Dismiss [ECF 31-3] at 26, 28, 30.

### b.   ADEA claims

Although Moore began by pursuing his age discrimination claims through the EEOC administrative process, see Ex. Y to Defs.' Notice of Filing Exs. [ECF No. 22-3] at 46 (referred to in plaintiff's amended complaint ¶ 71), he did not include those claims in his formal complaint of race and sex discrimination filed with the EEOC. See Ex. 41 to Pl.'s Opp'n to Defs.' Mot. to Dismiss at 24–31. Instead, he submitted a Notice of Intent to Sue to the EEOC on October 16, 2014. Am. Compl. ¶ 17. Different exhaustion rules therefore apply. The notice of intent to sue must be provided to the EEOC "within 180 days of the allegedly discriminatory act." Rann v. Chao, 346 F.3d 192, 195 (D.C. Cir. 2003) (citing 29 U.S.C. § 633a(c), (d)). Counting back 180 days from October 16, 2014, brings us to April 19, 2014. Therefore, claims arising from discrete acts that occurred on April 8 were not properly presented to the EEO.

But what about the previous point that Moore may not have discovered the discriminatory act until after April 19? While, as explained above, the 45-day period in which to contact an EEO

---

[6] "A court may consider an EEOC complaint . . . without converting a motion to dismiss into a motion for summary judgment because such records are public documents of which a court may take judicial notice." Ndondji v. InterPark Inc., 768 F. Supp. 2d 263, 272 (D.D.C. 2011) (internal quotation marks and alteration omitted).

[7] In particular: claim (p) that HUD refused to provide Moore with 80 hours of formal classroom training; claim (i) that HUD refused to execute a written PMF Participant Agreement for Moore; claim (m) that HUD refused to assist Moore in completing an IDP; claim (n) that HUD refused Moore's IDP; and claim (q) that HUD refused to provide Moore with a PMF developmental assignment consistent with his IDP.

counselor may be extended for an aggrieved person who "shows that he or she did not know and reasonably should not have been [sic] known that the discriminatory matter or personal action occurred," 29 C.F.R. § 1614.105(a)(2), the 180-day statutory time period is less flexible.  The 180-day time period is subject to equitable tolling "only in extraordinary and carefully circumscribed circumstances."  Breen v. Peters, 529 F. Supp. 2d 24, 26 (D.D.C. 2008).   And the burden of persuasion is on the party requesting that a statutory deadline be equitably tolled.  Id. at 27.  Moore has not responded to the government's argument that his claims based on discriminatory events that occurred before April 19 are barred.  Because Moore has not presented an argument as to why his claims based on events that occurred outside the statutory deadline should nonetheless be considered timely, the Court will dismiss those claims (described in footnote 4 supra p. 14).

Further—and again—HUD asserts that Moore failed to present six of his ADEA claims—largely grievances related to Moore's work assignments—to the EEOC.[8]  HUD is correct that these claims were not described in Moore's "Notice of Intent to Sue," see Ex. 1 to Am. Compl. [12-1] at 2–4; they are therefore unexhausted.[9]

\* \* \* \* \*

Hence, of the twenty-four actions that Moore has alleged were discriminatory, many were not administratively exhausted and shall be dismissed.   Remaining are eight claims of discrimination based on race and gender and twelve claims of discrimination based on age.  Moore's claim of discriminatory discharge also survives the exhaustion analysis.

---

[8] HUD initially listed eight such claims, but noted in its reply that two were mistaken.  Reply at 4 n.4.

[9] In particular: claim (r) that HUD circumvented its own procedures and guidelines; claim (t) that HUD forced Moore to travel to Georgia and work out in the field; claim (w) that HUD ordered Moore to work from home; claim (o) that HUD refused to assign Moore a mentor; claim (s) that HUD forced Moore to travel back and forth from Texas to Washington, D.C.; and claim (f) that HUD ordered Moore not to report to his duty station.

## 2. *Discrimination*

To survive HUD's motion to dismiss, Moore must allege facts that if true would establish the elements of each remaining claim of discrimination in his complaint. The essential elements of a Title VII or ADEA "discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008). "An adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Kline v. Berry, 404 F. App'x 505, 506 (D.C. Cir. 2010) (per curiam) (internal quotation marks omitted).

### a. Discriminatory discharge (Count V)

It is plain that termination is an adverse action that supports a claim of discrimination. Kline, 404 F. App'x at 506. And so Moore has pled facts to establish the first element of this discrimination claim. Further, by claiming that HUD's proffered reasons for his termination are false and that younger, female, non-African-American PMF employees were retained, Moore has also alleged facts that could establish that his termination was because of age, gender, or race. See Am. Compl. ¶ 108, 112. These alleged facts are enough to survive a motion to dismiss because they can support an inference of discrimination. See Nurriddin v. Bolden, 674 F. Supp. 2d 64, 90–91 (D.D.C. 2009) ("Merely alleging that the employer's proffered reasons for the adverse employment actions [are] false may support an inference of discrimination sufficient to survive a motion to dismiss."), aff'd, 818 F.3d 751 (D.C. Cir. 2016); Nichols v. Truscott, 424 F. Supp. 2d 124, 135 (D.D.C. 2006) ("One way a plaintiff can show that an adverse action gives rise to an inference of discrimination is by demonstrating that she was treated differently from similarly

situated employees who are not part of the protected class."). HUD's motion to dismiss Moore's

claim for discriminatory discharge will therefore be denied.

    b. <u>Disparate treatment in violation of Title VII (Count II)</u>

   Striking the unexhausted claims leaves Moore with eight claims of discriminatory conduct

based on race and gender under Count II.[10]  Included in his list of disparate treatment grievances

is claim (x) for a "discriminatory hostile work environment."  Am. Compl. ¶ 60(x).  This "claim,"

however, is appropriately considered later as a separate cause of action.  <u>See</u> <u>Franklin v. Potter</u>,

600 F. Supp. 2d 38, 77 (D.D.C. 2009) ("[D]iscrete acts constituting discrimination . . . claims are

different in kind from a hostile work environment claim." (internal quotation marks and alteration

omitted)).  Along similar lines, several of Moore's allegations of discriminatory conduct amount

to no more than a restatement of his legal causes of action.  Such "naked assertions"—like claim

(a) that HUD "denied or deprived Moore of equal employment opportunity in the PMF

program"—cannot survive the government's motion to dismiss.[11]  <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.

Moore's litany of offensive conduct, though, includes four exhausted claims that provide

"sufficient factual matter," <u>see</u> <u>id.</u>, in particular: claim (c) that HUD falsified Moore's personnel

records; claim (g) that HUD prevented him "from participating in and completing the PMF

Program"; claim (o) that HUD "refused to assign [him] a mentor in management"; and claim (w)

that Moore was ordered to work from home.  Am. Compl. ¶ 60.

   HUD argues that the Court should nonetheless dismiss these more detailed claims because

they do not amount to adverse employment actions.  Defs.' Mem. at 28–30.  When a Title VII

plaintiff rests a claim of adverse employment action on an event that does not involve loss of pay

---

[10] The remaining claims are: (a), (c), (g), (h), (o), (r), (w), and (x).

[11] In addition to claim (a), this includes claim (h) that HUD refused to apply OPM regulations and claim (r) that HUD circumvented its own procedures and guidelines.

or benefits, the relevant question is whether the employment action resulted in "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." Youssef v. FBI, 687 F.3d 397, 401 (D.C. Cir. 2012) (internal quotation marks omitted). Courts have concluded that employment actions similar to those alleged by Moore in his claims (o) and (w) are not adverse for purposes of Title VII. See Magiera v. City of Dallas, 389 F. App'x 433, 437–38 (5th Cir. 2010) (per curiam) (being sent home from work was not a materially adverse action); Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 930 (6th Cir. 1999) (requiring plaintiff to work at home was not a materially adverse employment action); Saab v. Womack, No. 07-10845, 2008 WL 240833, at *5–6 (E.D. Mich. Jan. 28, 2008) (delay in assigning a qualified mentor was not an "adverse action" for purposes of Title VII claim). Moore has not offered any explanation as to how the actions of which he complains were materially adverse. In fact, an email exchange, attached to and referenced in Moore's complaint, suggests that Moore's position never entailed working from an office to begin with. See Am. Compl. ¶ 32 (referring to exhibit 6); Ex. 6 to Am. Compl. [ECF No. 12-1] at 34 ("One of our key requirements is location within commuting distance from one of several specific major airports, since the work requires [] travel constantly to different locations to perform the inspections."). The Court will therefore grant HUD's motion to dismiss these claims.

But Moore's other two allegedly discriminatory actions give the Court pause. Moore has alleged in his claim (c) that HUD falsified Moore's personnel records to include a fraudulent SF-50 form ("Notice of Personnel Action"), which incorrectly stated that Moore had no prior creditable military service and was not a preference-eligible veteran. Am. Compl. ¶ 60(c); see id. ¶¶ 37–38. Because veterans are entitled to certain benefits in federal employment, these facts—

taken as true for the purposes of a motion to dismiss—could reflect a decision causing a significant change in benefits and therefore state a claim of employment discrimination.  Moore has also alleged in his claim (g) that HUD prevented him "from participating in and completing the PMF Program."  Id. ¶ 60(g).  A fair inference from the facts alleged in Moore's complaint is that he was reassigned or kept from a management position and relegated to a position with significantly lesser responsibilities.  If true, such conduct would constitute an adverse employment action.

Moore—by claiming that HUD did not take these actions against female and non-African-American PMF employees, Am. Compl. ¶ 61—has pled sufficient facts to support the inference that the actions were because of his race or gender.  See Nichols, 424 F. Supp. 2d at 135; see also Brady, 520 F.3d at 495.  Therefore, Count II survives the motion to dismiss as to these two claims only.

c.   <u>Disparate treatment in violation of the ADEA (Count I)</u>

Striking the unexhausted claims leaves Moore with twelve claims of discrimination based on age under Count I.  Eight of those are based on the same eight acts just discussed in the context of Moore's Title VII charge.  For the same reasons explained there, several of those are either fatally conclusory or do not amount to adverse employment actions, but the claims relating to the SF-50 and participation in the PMF program survive.  Moore also has four additional claims that HUD did not challenge as unexhausted as to his ADEA charge (see Defs.' Mem. at 18): specifically, claim (p) that HUD refused to provide Moore with 80 hours of formal classroom training; claim (q) that HUD "refused to provide Moore with a PMF developmental assignment consistent with his IDP, qualifications, educational background, and career interests"; claim (u) that HUD prevented Moore from attending scheduled PMF events and activities; and claim (v) that HUD "isolated Moore from his fellow PMFs."

i.     *Denial of classroom training*

Denial of training opportunities is materially adverse only if there is a "material change in . . . employment conditions, status, or benefits." Dorns v. Geithner, 692 F. Supp. 2d 119, 133 (D.D.C. 2010) (internal quotation marks omitted) (finding that defendant's refusal to allow plaintiff to attend four training courses was not an adverse action). Moore's assertion that he was not provided classroom training is untethered to any explanation of what the desired training entailed or why the training was important to his position. All that can be gleaned from his complaint is the assertion that "HUD was obligated to provide Moore . . . 80 hours of formal classroom training." Am. Compl. ¶ 45. Because Moore has not alleged any significant change in his employment or "objectively tangible harm" as a result of not receiving these classroom training hours, this claim must be dismissed. See Allen v. Napolitano, 774 F. Supp. 2d 186, 204 (D.D.C. 2011) (dismissing claim where plaintiff had "not alleged any significant change in her employment or 'objectively tangible harm' as a result of not receiving . . . training opportunities").

ii.     *Denial of work assignment consistent with development plan*

Moore's complaint that he was not given assignments commensurate with his IDP or qualifications is similarly flawed. Undesirable assignments are generally not adverse employment actions. See Bruder v. Chu, 953 F. Supp. 2d 234, 240–41 (D.D.C. 2013); Lester v. Natsios, 290 F. Supp. 2d 11, 29–30 (D.D.C. 2003). And Moore has pled no facts to show that the assigned work resulted in a loss of pay, benefits, or promotion possibilities. Accordingly, this claim will also be dismissed.

iii.     *Exclusion from PMF events and activities*

There is only one incident pled with any particularity that supports Moore's claims that HUD prevented him from attending scheduled PMF events and isolated him from his fellow PMFs.

That event occurred on May 12, 2014, when Moore was instructed to cancel his "pre-scheduled trip . . . for a mandatory agency-wide training event." Am. Compl. ¶ 89. The weight of authority suggests that denial of a single "travel opportunity does not constitute an adverse employment action unless the plaintiff can tie the alleged discriminatory employment action to some actual, tangible adverse employment consequence." Edwards v. U.S. EPA, 456 F. Supp. 2d 72, 85 (D.D.C. 2006) (internal quotation marks omitted). Again, Moore has not alleged that his exclusion from this trip had an adverse impact on his employment terms or conditions or caused any objectively tangible harm. In fact, the email quoted by Moore in his complaint shows that HUD expected Moore to "have the opportunity" to participate in the missed "training at a later date." Am. Compl. ¶ 90. Hence, claims (u) and (v) cannot support his ADEA cause of action either.

* * * * *

This concludes, for now, the discrimination analysis. HUD's motion to dismiss Counts I and II is granted in part and denied only as to Moore's allegations that HUD discriminated against him by falsifying his personnel records and preventing him from completing the PMF program. HUD's motion to dismiss Count V (discriminatory discharge) is denied.

### 3. *Retaliation*

To prove retaliation under Title VII and the ADEA, a plaintiff must show that the employer took a materially adverse action against him because the employee had brought or threatened to bring a discrimination claim. Baloch, 550 F.3d at 1198. Moore asserts several retaliation claims.

### a. Retaliatory discharge (Count V)

Moore alleges that he complained about unlawful discrimination on June 10 and 24, 2014. Am. Compl. ¶ 70. He asserts that he submitted an informal EEO complaint in July 2014 and amended that complaint on August 1. Id. ¶ 71. On September 24, 2014, Moore says, he was fired by his fifth line manager Delton Nichols, who had knowledge of Moore's protected activity. Id. ¶

109.  He contends that the reasons given by Nichols for terminating Moore's employment—for example, Moore's failure to follow instructions, inability to learn, and negative attitude—are "false and misleading."  Id. ¶ 112.  These allegations suffice to establish that Moore opposed discrimination and that HUD took a materially adverse action against him.  See Massaquoi v. District of Columbia, 81 F. Supp. 3d 44, 50 (D.D.C. 2015) ("Protected activity includes making an informal complaint of discrimination.").

The remaining issue, then, is one of causation: whether the facts alleged can show that HUD terminated Moore because of Moore's engagement in protected activity.  One legitimate way to support a causal connection between the protected EEO activity and the adverse action is the closeness of time between the two.  Nurriddin, 674 F. Supp. 2d at 92–93.  While courts have not definitively "established the maximum time lapse between protected . . . activity and alleged retaliatory actions," Brodetski v. Duffey, 141 F. Supp. 2d 35, 43 (D.D.C. 2001), an action which occurs more than three months after the protected activity is not likely to qualify for such a causal inference, see Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (per curiam) (citing with approval circuit cases finding three and four months to be too temporally remote to establish causation); but cf. Hamilton v. Geithner, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012) ("[N]either the Supreme Court nor the [D.C. Circuit] has established a bright-line three-month rule.").  Under the two-month mark, courts have found an inference of retaliation more plausible.  See, e.g., Brownfield v. Bair, 541 F. Supp. 2d 35, 45 (D.D.C. 2008) (finding that less than two months between protected activity and adverse action was sufficient to establish a causal connection); Goos v. Nat'l Ass'n of Realtors, 715 F. Supp. 2, 4 (D.D.C. 1989) (finding that just over five weeks between the protected action and the plaintiff's termination was short enough time lapse to infer a causal connection).

Here, more than three months passed between Moore's first complaint opposing discrimination in June and his termination in September, but there was a less than two-month lapse between his amended informal complaint and his termination.  It may be appropriate to consider this later date in assessing temporal proximity.  See Brodetski, 141 F. Supp. 2d at 43 (looking at "more recent EEO activities" to determine temporal proximity); see also Nguyen v. Mabus, 895 F. Supp. 2d 158, 186 (D.D.C. 2012) (same).  And that less than two-month gap could support an inference of causation.  However, the Court need not rely only on temporal proximity to support an inference that Moore was fired due to his protected activity, because Moore has also disputed HUD's explanation for terminating him.  If, as Moore contends, the reasons proffered by HUD are false, then a reasonable inference could exist that the decision to fire him was retaliatory.  See Harris v. D.C. Water & Sewer Auth., 791 F.3d 65, 69–70 (D.C. Cir. 2015).  Therefore, with respect to the plaintiff's claim of retaliatory discharge, the defendants' motion to dismiss will be denied.

b.      Other allegedly retaliatory actions (Count III)

Moore also brings retaliation claims based on allegations of various unfavorable developments at work throughout the summer of 2014.  See Am. Compl. ¶¶ 72–76.  But the majority of these claims were not exhausted.[12]  The only actions raised in Moore's complaint that he previously identified as retaliatory were HUD's refusal to assign him a mentor in management, HUD's mandate that he work from home, and HUD's decision to assign him an undesirable position.  See Ex. 41 to Pl.'s Opp'n to Defs.' Mot. to Dismiss at 31; Ex. Y to Defs.' Notice of Filing Exs. at 47.  Although the Court has concluded above that two of these actions do not

---

[12] This includes Moore's claims that HUD retaliated against him by (1) refusing to execute a written PMF Participant Agreement, Am. Compl. ¶ 72; (2) refusing to assist him to complete an IDP and approve it, id.; (3) refusing to provide him with an appropriate PMF developmental assignment, id.; (4) refusing to provide him with 80 hours of formal classroom training, id. ¶ 74; (5) refusing to provide a developmental assignment consistent with his IDP, id.; and (6) forcing him into the UPCS Inspection Certification Training, id.

constitute adverse actions for purposes of establishing a disparate treatment discrimination claim, the Court must undertake a separate analysis in the retaliation context because what constitutes an adverse action under Title VII's antiretaliation provision is different than what constitutes an adverse action under the antidiscrimination provision.  Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 57, 67 (2006).

"Unlike in the discrimination context, the 'scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm,' and therefore, it does not require a materially adverse change in the terms and conditions of employment."  Morales v. Gotbaum, 42 F. Supp. 3d 175, 196 (D.D.C. 2014) (citation omitted) (quoting Burlington N., 548 U.S. at 67).  "But the concept is not unlimited, and actionable retaliation still does not include trivial harms."  Id.  To be materially adverse, the employer's action must be one which would "dissuade[] a reasonable worker from making or supporting a charge of discrimination."  Burlington N., 548 U.S. at 68 (internal quotation marks omitted).  Under this standard, assigning Moore a mentor not to his liking is not a materially adverse action.  Rather, receiving a mentor—or supervisor or team member for that matter—who does not align with one's preferences is a common workplace frustration.  It is not the sort of adverse action that would dissuade a reasonable worker from making a charge of discrimination.  Cf. Saab, No. 07-10845, 2008 WL 240833, at *5.  Hence, Moore's allegation that HUD assigned him an inappropriate mentor cannot support a retaliation claim.

His other retaliation claims fail as well.  Even assuming that being required to work from home and receiving undesirable assignments could dissuade a reasonable worker from making a charge of discrimination, Moore's retaliation claim cannot survive the government's motion to dismiss because it is clear from the face of his complaint that he cannot show a causal connection

between these actions and his protected activity.  His complaint alleges that he was ordered not to report to his duty station in Fort Worth in April 2014.  Am. Compl. ¶ 83.  And he did not return to that duty station after the week of April 21, 2014.  Id. ¶ 85.  In his claim that HUD retaliated against him by ordering him to work at home, Moore reiterates "he wasn't allowed to work at his duty station."  Id. ¶ 76.  Because the existing status quo in April was already that Moore had been ordered not to report to his duty station, it is "factually impossible" for him to prove that he was ordered to work from home in retaliation for protected activity that took place in June.  See Ramseur v. Perez, 962 F. Supp. 2d 21, 29 (D.D.C. 2013); see also Massaquoi, 81 F. Supp. 3d at 50 ("For the purposes of the Court's analysis of the plaintiff's Title VII retaliation claim then, any alleged materially adverse employment action that occurred before the plaintiff complained . . . is irrelevant.").  Similarly, Moore's complaint establishes that he was already "being forced to work undesirable assignments" before he engaged in protected activity—that grievance, in fact, was the subject of his protected activity.  See Am. Compl. ¶ 70

Therefore, the government's motion to dismiss Moore's retaliation claim will be granted as to the discrete actions alleged in Count III.

### 4.  *Hostile work environment (Count IV)*

Moore alleges that beginning in March 2014—which is before he began work at HUD in late April—he was subjected to a discriminatory and retaliatory hostile work environment that was "vicious, severe, pervasive, offensive, degrading, and humiliating" and "continued unabated" until his termination.  Am. Compl. ¶¶ 102–03.  To prevail on his hostile work environment claim, Moore must show that he "was subjected to discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment."  Brooks v. Grundmann, 748 F.3d 1273, 1276 (D.C. Cir. 2014) (internal

quotation marks and alterations omitted).  Conduct meeting this standard can amount to retaliation.  <u>Baird v. Gotbaum</u>, 662 F.3d 1246, 1250 (D.C. Cir. 2011).  "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  <u>Baloch</u>, 550 F.3d at 1201.  "To assert a claim for hostile work environment, the plaintiff must demonstrate some linkage between the hostile behavior and the plaintiff's membership in a protected class," <u>Scott v. Dist. Hosp. Partners, L.P.</u>, 60 F. Supp. 3d. 156, 164 (D.D.C. 2014) (internal quotation marks omitted), or in the case of a retaliatory hostile work environment, "a causal connection between the harassment and [the] protected activity," <u>Graham v. Holder</u>, 657 F. Supp. 2d 210, 216 (D.D.C. 2009).

To the extent that Moore relies on discrete adverse actions, he misunderstands the nature of a hostile work environment claim.  <u>See</u> Am. Compl. ¶ 83 (ordered to never report to duty station); <u>id.</u> ¶ 86 (forced to work out in the field); <u>id.</u> ¶ 95 (garnishment of wages).  "A hostile work environment . . . must be based on 'one unlawful employment practice' of pervasive, insulting, discriminatory conduct that makes the plaintiff's day-to-day work environment severely 'abusive.'"  <u>Rattigan v. Gonzales</u>, 503 F. Supp. 2d 56, 82 (D.D.C. 2007) (quoting <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 117 (2002)).  "Cobbling together a number of distinct, disparate acts will not create a hostile work environment, because discrete acts constituting discrimination or retaliation claims are different in kind from a hostile work environment claim." <u>Franklin</u>, 600 F. Supp. 2d at 77 (internal quotations and alterations omitted).

But beyond Moore's repetition of the discrete actions that form the basis of Counts I and II, his hostile work environment claim in Count IV also alleges verbal harassment.  He claims that:

- On April 28, 2014, Dilip Patel "verbally reprimanded, humiliated, degraded and embarrassed Moore in front of a building inspector and others because Moore did not know what a 'GFI' was." Am. Compl. ¶ 86.

- On May 20, 2014, Jose Bosque-Perez "verbally reprimanded him for errors on reports . . . , scolded him that he should have known by then how to complete the reports, placed his hand in front of Moore's face to silence him . . . , ordered Moore to look at him when he is talking, and escalated the situation to the point where Moore began crying." Id. ¶ 92.

- "From June 2014 through September 2014, Dilip Patel, Brian Ruth, and Delton Nichols, respectively, made offensive and insulting remarks or comments suggesting that Moore worked too slow, suffered from memory loss, had a learning inability, and could not sufficiently comprehend the exercises in the UPCS Inspection Certification Training because of his age." Id. ¶ 88.

It is this third example of alleged harassment that most concerns the Court. HUD argues that even assuming all these allegations are true, they "would still not be sufficient for a finding of hostile work environment." Defs.' Mem. at 36. The cases cited by HUD, however, are distinguishable. See id. In Stewart v. Evans, the D.C. Circuit found that plaintiff's claim amounted "to only one isolated incident." 275 F.3d 1126, 1134 (D.C. Cir. 2002). Here, Moore has alleged that he was subjected to multiple offensive comments regarding his age over a four-month period. And the dismissal of the hostile work environment claim in the other case cited by HUD depended on that court's finding that the evidence was insufficient, see Ware v. Hyatt, 80 F. Supp. 3d 218, 229–30 (D.D.C. 2015)—an inquiry that the Court can only conduct upon consideration of the government's alternative motion for summary judgment. Still, it is true that "not just any offensive

or discriminatory conduct rises to an actionable hostile work environment." <u>Nurriddin</u>, 674 F.

Supp. 2d at 93.  For this reason, the Court doubts that the first two examples offered by Moore—

workplace reprimands, more or less—are enough to show a hostile work environment.  <u>See</u>

<u>Rattigan</u>, 503 F. Supp. 2d at 82 ("Plaintiff must show far more than . . . occasional off-color

remarks or criticisms, and snubs or perceived slights to establish a hostile work environment.");

<u>Bell v. Gonzales</u>, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) (holding that the sporadic use of abusive

language is insufficient to establish a hostile work environment).  However, because his claim of

a hostile work environment in violation of Title VII fails at summary judgment, as discussed

below, the Court will assume these allegations in total are sufficient to state a claim.  Further,

Moore has alleged HUD did not subject female and non-African-American employees to the same

hostile workplace.  At the motion to dismiss stage, that is enough to state that the harassment was

because of race and gender.

In addition, Moore's allegations of abuse because of age in the third bullet point above

support a claim for a hostile work environment in violation of the ADEA.  While the parties'

evidence may reveal that the alleged misconduct does not rise to the level of severity or

pervasiveness called for by the law or was not discriminatory, the conduct as stated is sufficiently

offensive and frequent to survive a motion to dismiss.  <u>See Scott</u>, 60 F. Supp. 3d at 165 (Allegations

of "tirades of abusive and degrading comments" were "just barely sufficient to satisfy [the

plaintiff's] burden at this stage to plead facts that, taken as true, allow for a reasonable inference

of a violation of Title VII for hostile work environment." (alterations omitted)).  A reasonable juror

could conclude based on the comments themselves that the alleged abuse was because of age.

Moore's claim of a retaliatory hostile work environment, though, is weaker still because

the amended complaint asserts that the abuse began his "first day on duty," Am. Compl. ¶ 83—

months prior to his engagement in any protected activity—and "continued unabated" until his termination, id. ¶ 103.  Because Moore's complaint does not plead facts that could establish causation, his retaliatory hostile work environment claim will be dismissed.  See Bryant v. Brownlee, 265 F. Supp. 2d 52, 70 (D.D.C. 2003) ("Plaintiff's concession that the ostracism preceded plaintiff's protected activity is fatal to her retaliation claim as it undercuts proof of causation."); Batson v. Powell, 912 F. Supp. 565, 576 (D.D.C. 1996) (holding an "inference of causation [was] improper" where the "same alleged 'harassment' and 'hostile work environment' existed prior to plaintiffs' engaging in the protected activity").

## III.    **Motion for Summary Judgment**

To summarize at this point, Moore has stated a claim for (1) discrimination because of race, age, and gender based on his termination, HUD's falsification of his personnel records, and HUD's refusal to allow him to complete the PMF program; for (2) retaliation based on his termination; and for (3) a hostile work environment because of race, age, and gender.  HUD has moved in the alternative for summary judgment.  Moore objects that the "motion for summary judgment in the alternative is premature" because "[n]o discovery has been taken, and Moore has a substantial need to conduct discovery."  Pl.'s Opp'n to Defs.' Mot. to Dismiss (Pl.'s Opp'n) [ECF No. 29] at 32–33.

The party opposing summary judgment "ha[s] the burden to state with 'sufficient particularity . . . why discovery [is] necessary.'"  Ikossi v. Dep't of Navy, 516 F.3d 1037, 1045 (D.C. Cir. 2008) (quoting Strang v. U.S. Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989)).  If the opposing party "adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion," then "a court may deny a motion for summary judgment" and permit discovery.  Strang, 864 F.2d at 861.  But even at this early stage, a district court may deny a request for discovery and grant a motion for summary judgment when

31

the non-moving party "offer[s] no reasonable basis to suggest that discovery" will bear out its claims. Carpenter v. Fed. Nat'l Mortg. Ass'n, 174 F.3d 231, 237–38 (D.C. Cir. 1999). With these principles in mind, the Court turns to defendants' motion for summary judgment on the remaining claims.

### A.    Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To demonstrate a "genuine dispute," a non-moving party must put forth more than the "mere existence of a scintilla of evidence" to support its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Indeed, "[b]y pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment." Lester, 290 F. Supp. 2d at 20.  And the moving party may also succeed where the non-moving party sets out evidence that is "merely colorable, or is not significantly probative." Anderson, 477 U.S. at 249 (citation omitted).  But the Court must view all evidence in the light most favorable to the non-moving party, and must draw "all justifiable inferences" in his favor.  Id. at 255.

### B.    Discrimination

Moore's discrimination claims are properly analyzed under the familiar McDonnell Douglas burden-shifting framework.  See Ford v. Mabus, 629 F.3d 198, 201 (D.C. Cir. 2010) (applying McDonnell Douglas to an ADEA claim).  After a plaintiff establishes a prima facie case of employment discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  If the employer does so, the burden shifts again, requiring the plaintiff to demonstrate that the employer's "stated reason . . . was in fact pretext."  Id. at 804.

But, as the D.C. Circuit has instructed, "where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas." Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). Instead, the case is reduced to "one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race [or age]?" Id. Thus, "to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003).

### 1.    *Discriminatory discharge (Count V)*

HUD asserts legitimate non-discriminatory reasons for terminating Moore: he "was removed because of misconduct and poor performance" including his "failure to complete the [UPCS] certification process." Defs.' Statement of Material Facts Not in Genuine Dispute [ECF No. 20-1] at ¶ 47; see Defs.' Reply at 6–7. These reasons were provided in Moore's Notice of Termination. Ex. Q to Defs.' Notice of Filing Exs. [ECF No. 22-2] at 31–34. As proof that Moore did not complete required training, HUD has submitted an email sent by Moore on June 10, 2014, "to make it emphatically and unambiguously clear that [he did] not wish to be trained as a Quality Assurance Inspector and [had] no desire to spend even one more day in such training." Ex. O to Defs.' Notice of Filing Exs. [ECF No. 22-2] at 18. Further, a screenshot provided by HUD shows that as of September 15, 2014, Moore had last attempted to even access the training exercises on August 18, 2014. Ex. S to Defs.' Notice of Filing Exs. [ECF No. 22-2] at 40–41. At that time his

course certification showed an exercise that was incomplete.  Id.  Because HUD has offered

Moore's failure to complete required training as a reason for the adverse employment action, i.e.,

his discharge, the Court considers only whether Moore has shown that a reasonable jury could

infer that this non-discriminatory reason was false.  Brady, 520 F.3d at 493–94.

A plaintiff can establish an inference that his employer's non-discriminatory reason for the

relevant employment action was pretext by presenting evidence that the employer treated other

employees more favorably in the same factual circumstances.  Laurent v. Bureau of Rehab., Inc.,

544 F. Supp. 2d 17, 22 (D.D.C. 2008).  In his complaint, Moore identified ten "PMF employees"

who he alleged were treated more favorably.  Am. Compl. ¶¶ 61, 66.  To prove that he is similarly

situated to these employees, Moore must "demonstrate that all of the relevant aspects of [his]

employment situation were nearly identical to those of the" allegedly comparable employees.

Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999).

Moore's evidence regarding these comparators includes several charts that identify each

alleged comparator by age, race, and gender.  Exs. 2–11 to Pl.'s Opp'n [ECF No. 31-1] at 4–23.

The charts further indicate whether these individuals engaged in protected activity (none); what

firm job offer they received (PMF); whether they executed a PMF participant agreement (yes);

whether they were terminated (no); whether they were offered an "existent position" (yes); whether

they were offered a "construction specialist" targeted position (no); whether they received proper

treatment under OPM and PMF program procedures (yes); whether HUD had a need for their skills

(yes); and whether they received a letter of acceptance (yes).  Id.  Moore has also provided the SF-

50 forms for these ten employees.  Exs. 22–31 to Pl.'s Opp'n [ECF No. 31-2] at 5–23.  The forms

show that they were all appointed as PMFs and assigned duty stations in Washington, D.C., and

San Francisco, id.—not Forth Worth like Moore, Ex. 32 to Pl's Opp'n [ECF No. 31-2] at 25.  HUD

has responded with its own chart to show the many ways in which these ten employees are <u>not</u> similarly situated.  Ex. FF to Defs.' Reply [ECF No. 40-1] at 9.  HUD's submission confirms that none of these ten individuals was assigned a duty station of Fort Worth nor did they hold the position of construction analyst.  <u>Id.</u>

Moore's attempt to establish an inference of pretext by pointing to the more favorable treatment of other HUD employees fails because the evidence does not establish a genuine dispute that the proffered comparator employees are similarly situated to him.  Based on Moore's own evidence, these individuals were not assigned to work in Fort Worth.  And there is no basis in the record to find that these individuals shared his position, work responsibilities, or supervisor—let alone also failed to complete required training.  Hence, no reasonable jury could infer discrimination from the fact that HUD treated these differently situated employees differently from Moore.

The question that remains is whether the Court may grant HUD's motion for summary judgment before Moore has had the opportunity to conduct discovery in this area.  To obtain time for discovery, a nonmovant must submit an "affidavit or declaration [showing] that, for specified reasons, [he] cannot present facts essential to justify [his] opposition."  Fed. R. Civ. P. 56(d).  The declaration must "outline the particular facts he intends to discover and describe why those facts are necessary to the litigation," explain why he could not produce those facts, and "show the information is in fact discoverable."  <u>Convertino v. U.S. Dep't of Justice</u>, 684 F.3d 93, 99–100 (D.C. Cir. 2012).

Moore has not submitted such an affidavit.  But that is not fatal because "in the absence of an affidavit, courts may nonetheless postpone summary judgment if additional filings in the case have served as the functional equivalent of an affidavit and informed the court that further

discovery is needed." Hicks v. Gotbaum, 828 F. Supp. 2d 152, 159 (D.D.C. 2011). Moore has repeatedly expressed his belief that discovery is necessary in this case. See Pl.'s Mot. for Clarification [ECF No. 51] at 1–3 (seeking clarification whether discovery would be permitted); Pl.'s Mot. for Sanctions [ECF No. 46] at 34–38 (submitting a proposed joint discovery plan); Pl.'s Statement of Genuine Disputes [ECF No. 30] at 1 (arguing that "Defendants' Motion should be denied—at least until Moore is able to or is afforded the opportunity to conduct discovery"); Pl.'s Opp'n at 32 ("Defendants' motion for summary judgment in the alternative is premature . . . .").[13]

Moore's use of additional filings rather than an affidavit or declaration could be sufficient, but such filings still must: (1) outline the particular facts he intends to discover and describe why those facts are necessary to the litigation; (2) explain why he could not produce the facts in opposition to the motion for summary judgment; and (3) show the information is in fact discoverable. Convertino, 684 F.3d at 99–100. The Court has searched Moore's many filings that express a need for discovery. None meets even the first criterion to describe the "particular facts" he intends to discover and explain why those facts are necessary to the litigation.

For example, to succeed on his disparate treatment claims, Moore must put forth "similarly situated" employees. The only possibly related discovery Moore seeks is to explore "[c]urrent and former employees of HUD who possess relevant knowledge and information including current and former Presidential Management Fellows" "in further factual development of his claims related to the above-identified genuine disputes." Pls.' Statement of Genuine Disputes [ECF No. 30] ¶ 59.

---

[13] On November 11, 2015, Moore filed a motion for sanctions against defendants for their failure to conduct a case management conference and complete a proposed discovery plan. Pl.'s Mot. for Sanctions [ECF No. 46]. Attached to that motion was Moore's proposed joint discovery plan. Id. at 34. While the Court denied Moore's motion for sanctions, Order, Jan. 14, 2016 [ECF No. 52], the Court has still considered the proposed discovery plan in deciding whether discovery should be allowed prior to resolving defendants' motion for summary judgment.

These "[c]onclusory allegations without any supporting facts are not sufficient to justify additional discovery" as to Moore's claim of discriminatory discharge.  Hicks, 828 F. Supp. 2d at 159; see Turner v. U.S. Capitol Police, 34 F. Supp. 3d 124, 136–37 (D.D.C. 2014) (granting defendant's motion for summary judgment prior to discovery where plaintiff made general assertion that discovery was necessary to determine "whether Defendants treated similarly situated individuals outside Plaintiff's protected age category more favorably" (alterations omitted)).  Accordingly, here summary judgment on Moore's surviving discrimination claims is warranted without the need for discovery.  See Dunning v. Quander, 508 F.3d 8, 10 (D.C. Cir. 2007) (affirming summary judgment for the defendant because plaintiff "failed to provide any persuasive reason for needing discovery"); see also Messina v. Krakower, 439 F.3d 755, 762 (D.C. Cir. 2006).

### 2. *Falsification of personnel records (Counts I & II)*

Moore asserts in Counts I and II that HUD discriminated against him by falsifying his personnel records to include a fraudulent SF-50 form, which incorrectly stated that Moore had no prior creditable military service and was not a preference-eligible veteran.  Am. Compl. ¶ 60(c); id. ¶ 69 (realleging the claims in paragraph 60).  HUD admits that it "initially miscoded [Moore] as a non-veteran."  Defs.' Mem. at 22.  But even assuming that the miscoding was intentional, Moore still must provide evidence that the falsification constituted a decision that caused a "significant change in benefits" in order to survive HUD's summary judgment motion.  See Kline, 404 F. App'x at 506.

Moore seems to suggest that had he been properly credited for his military service he—rather than non-veteran candidates—would have received an offer for a PMF position.  Pls.' Statement of Genuine Disputes ¶ 26 (asserting that during his employment, non-veterans received firm job offers for the position Presidential Management Fellow).  The problem for Moore is that

there is no genuine dispute that he <u>did</u> receive a PMF offer.  Attached to Moore's complaint is the offending SF-50 that indicated no "creditable military service" and no veterans' preference.  Ex. 8 to Am. Compl. [ECF No. 12-1] at 39.  And that same document lists his position title as "presidential mgmt fellow."  <u>Id.</u>  Another one of Moore's exhibits is the "official list of finalists for the PMF class of 2013," which lists Moore as a finalist.  Ex. 3 to Am. Compl. [ECF No. 12-1] at 16.  Therefore, based on Moore's evidence alone, it cannot be disputed that he did receive a PMF offer.  Furthermore, in Moore's appeal to the Merit Systems Protection Board, in which he argued that he had not been classified as a veteran, the administrative judge found that Moore had "suffered no harm as a result of the agency's mistake."  <u>See</u> Ex. D to Defs.' Notice of Filing Exs. [ECF No. 22-1] at 22.  Having nonetheless received the benefit that would flow from his veteran status, the misinformation in Moore's SF-50 cannot constitute an adverse employment action.  The Court again concludes that granting summary judgment to HUD on this issue is proper despite Moore's lack of opportunity for discovery.  He has identified no discovery that would or could create a dispute as to whether he was offered a PMF position.  His own evidence is already conclusive on that point.

### 3. *Exclusion from PMF program (Counts I & II)*

Moore's claim that HUD discriminated against him by preventing him from participating in the PMF program fails for the same reasons the previous two discrimination claims fail.  First, there is no genuine dispute that Moore was a participant in the PMF program.  Second, to the extent that Moore was kept from PMF activities and ultimately removed from the program, HUD has provided legitimate, non-discriminatory reasons for its actions that Moore fails to rebut.  HUD is therefore entitled to summary judgment as this claim of discrimination as well.[14]

---

[14] Moore's <u>gender</u> discrimination claims fail for the additional reason that he has not shown "additional background circumstances that support the suspicion that [HUD] is the unusual employer who

### C.      Retaliation

Moore's claim of retaliatory discharge (Count V) must also be evaluated under the McDonnell Douglas framework.  See Morgan v. Fed. Home Loan Mortg. Corp., 328 F.3d 647, 651 (D.C. Cir. 2003).  To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action.  See Burlington N., 548 U.S. at 67–69.  As with discrimination claims, if the employer successfully presents a legitimate, non-retaliatory reason for its actions, "the presumption raised by the prima facie case is rebutted and drops from the case."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (citation and internal quotation marks omitted).

Again, HUD has provided a legitimate reason for Moore's termination—his failure to complete required training.  To rebut this explanation, Moore must demonstrate that a reasonable jury could find that HUD's asserted non-retaliatory reason was not the actual reason.  Brady, 520 F.3d at 494.  There is no direct evidence that Moore's termination was retaliatory, and so Moore must rely on evidence from which a retaliatory motive could be inferred.  To the extent Moore wants to show a causal link based on the fact that HUD "did not terminate PMFs' employment who did not engage in EEO activity," Pls.' Statement of Genuine Disputes ¶ 52,  his argument fails to survive summary judgment due to the same absence of evidence, discussed above, that the retained PMFs were at all similarly situated.  And while temporal proximity between the protected events and his termination can support an inference of causation, Moore must present "positive

---

discriminates against the majority."  Bryant v. Leavitt, 475 F. Supp. 2d 15, 25–26 (D.D.C. 2007) (internal quotation marks omitted); see Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 851–52 (D.C. Cir. 2006).

evidence beyond mere proximity" to create a genuine issue of material fact concerning whether the motive for his discharge was poor work performance or retaliation.  Woodruff v. Peters, 482 F.3d 521, 529–30 (D.C. Cir. 2007).  Moore has offered no such evidence, nor explained what discovery he seeks to make this showing.  Therefore, the Court will grant HUD's summary judgment motion as to the retaliatory discharge claim in Count V.

D.      **Hostile Work Environment**

Finally, we reach Moore's last surviving claim, the allegation in Count IV that he was subjected to a discriminatory hostile work environment.  To establish a prima facie case for a hostile work environment claim, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff's protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment, but nonetheless failed to take steps to prevent it."  Baloch v. Norton, 355 F. Supp. 2d 246, 259 (D.D.C. 2005), aff'd sub nom. Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008).  Courts must look at the totality of the circumstances when determining whether a hostile work environment exists, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998) (internal quotation marks omitted).

The Court concludes that Moore's claim of a hostile work environment based on age is not ripe for summary judgment at this time.  In its motion to dismiss this claim, HUD relies primarily on the argument that even assuming the facts alleged are true, Moore has failed to state a claim for

a hostile work environment.[15]   Defs.' Reply at 15–16; Defs.' Mem. at 31–36.   The comments alleged by Moore, to be sure, are not among the most severe workplace outbursts based on age. But the alleged conduct may still have been pervasive enough to create an abusive working environment based on age.   Without further details regarding these alleged incidents, the Court cannot determine whether Moore's offensive working conditions, as alleged, were sufficiently severe or pervasive to create hostile workplace liability under the ADEA.   See Na'im v. Rice, 577 F. Supp. 2d 361, 378 (D.D.C. 2008) (denying summary judgment where both parties failed to specify the frequency of the allegedly derogatory remarks); see also Hunt v. Cromartie, 526 U.S. 541, 552 (1999) ("Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible to different interpretations or inferences by the trier of fact.").   What tips the scale against defendants' summary judgment request under the ADEA is the explicitly age-related content of the alleged abuse.   Specifically, Moore alleges that his supervisors made insulting comments suggesting that he worked too slowly, suffered from memory loss, and could not understand his assignments "because of his age."   Am. Compl. ¶ 88. That is enough for now to create a genuine issue of material fact.

The same cannot be said for Moore's claim that he was subjected to a hostile work environment because of race or gender.   It is important in hostile work environment cases to exclude from consideration actions that "lack a linkage of correlation to the claimed ground of discrimination.   Otherwise, the federal courts will become a court of personnel appeals." Bryant, 265 F. Supp. 2d at 63 (internal quotation marks omitted); see Baloch, 550 F.3d at 1201 (considering whether comments or actions "expressly focused on [plaintiff's] race, religion, age, or disability").

---

[15] HUD also pointed to Moore's retraction in an email to the human resources department where he wrote he "was not filing a hostile work environment claim in my email in the legal sense of the meaning." Defs.' Mem. at 34. But the Court does not see what follows from this fact.  That Moore did not intend to make a formal charge of a hostile work environment at that time does not establish that one did not exist.

Unlike Moore's recitation of age-related insults, he has made no similar allegations of race- or gender-tinged harassment.  And once again, the assertion that HUD did not treat other employees in the same way does not get him past summary judgment without evidence that these employees were indeed similarly situated.  The Court, therefore, will grant HUD's summary judgment motion as to the claim that Moore was subjected to a hostile work environment because of his race and gender.  The motion will be denied, however, as to his ADEA hostile work environment claim.

## CONCLUSION

For the foregoing reasons, the Court will deny [53] plaintiff's motion to disqualify the undersigned judge, and will grant in part and deny in part [20] defendants' motion to dismiss the complaint or in the alternative for summary judgment.  Defendants' motion will be denied as to Moore's claim that HUD subjected him a hostile work environment in violation of the ADEA. The motion will be granted in all other respects.  A separate order will issue.

/s/
_____
JOHN D. BATES
United States District Judge

Dated: June 17, 2016