# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREW P. MOORE,<br><br>    Plaintiff,<br><br>    v.<br><br>BENJAMIN S. CARSON,[1] Secretary, U.S. Department of Housing and Urban Development, et al.<br><br>    Defendants. | Civil Action No. 14-2109 (JDB) |

## MEMORANDUM OPINION

Andrew Moore is a former employee of the U.S. Department of Housing and Urban Development (HUD). He is an African-American man over 62 years old, and he alleges that HUD, and several individually named HUD employees, took dozens of adverse actions against him because of his race, sex, and age, and in retaliation for filing a complaint with the Equal Employment Opportunity Commission (EEOC). In a June 17, 2016, Memorandum Opinion and Order, this Court granted a motion to dismiss all claims against the individual defendants, granted in part the motion to dismiss the claims against HUD itself (via the HUD Secretary), and granted in part HUD's motion for summary judgment on Moore's remaining claims. Ultimately, the only one of Moore's claims to survive is his claim of a hostile work environment under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Unhappy with this result, Moore filed a motion to vacate the June 17 decision. After a detour to the D.C. Circuit, that motion is now before this Court. For the reasons explained below, the Court will deny Moore's motion.

---

[1] Benjamin S. Carson has been substituted for Julian Castro as the Secretary of the U.S. Department of Housing and Urban Development per Federal Rule of Civil Procedure 26(d).

1

## BACKGROUND

I. **Factual Background**

The facts are explained more fully in the Court's June 17 Memorandum Opinion. See 192 F. Supp. 3d 18, 31–33 (D.D.C. 2016). A brief summary here will suffice.[2]

In 2014, Moore was selected as a finalist for the Presidential Management Fellowship (PMF) by the Office of Personnel Management. Am. Compl. [ECF No. 12] ¶ 27. The PMF program is a two-year fellowship that serves as an entrance to federal employment for certain individuals with advanced degrees. See 5 C.F.R. §§ 362.403(b), (f), 362.404(a). In March 2014, Moore interviewed with HUD at a job fair where agencies could recruit and hire PMF finalists. That interview led to a job offer for a role that Moore believed was a "management position" overseeing housing grants and vouchers in the Fort Worth, Texas, regional office. See Am. Compl. ¶ 28.

When Moore started the job in April 2014, he was dismayed to learn that his role was that of a building inspector, rather than a manager. Id. ¶¶ 36, 46–47. Much to his frustration, he saw other PMF employees with less education and management experience assigned to higher paying positions. Id. ¶ 43. Moore believes that HUD intentionally discriminated against him by fraudulently "deceiv[ing] him into believing that he would be offered a legitimate Presidential Management Fellow position," id. ¶ 126(a), and then pushing him into a worse role once he arrived, id. ¶ 34. And he believes this discrimination campaign continued once he was on the job. He argues that other PMF employees at HUD—in particular, employees who were female, not African American, or were younger—were treated better than he was. Id. ¶¶ 61, 66.

---

[2] These are the facts as alleged by Moore, unless otherwise noted. Moore's version of events is at times difficult to follow, but this version represents the Court's best effort to distill the narrative.

Ultimately, Moore was fired on September 24, 2014. Id. ¶ 107. He alleges that his Notice of Termination contains "false trumped-up charges," and that other PMF employees (who were younger, female, or not African American) were not fired. Id. ¶¶ 108, 113.

## II. Procedural Background

In the fall of 2014, Moore filed two formal Equal Employment Opportunity (EEO) complaints charging HUD with race and sex discrimination, retaliation, hostile work environment, and discriminatory and retaliatory discharge. Id. ¶ 19. He also separately raised his age discrimination claim with the EEOC around the same time, when he filed a notice of intent to sue. Id. ¶ 17. He ultimately brought suit in this Court on December 11, 2014. He raised nine causes of action. The first five alleged that then-HUD Secretary Julian Castro (hereinafter, HUD) discriminated against Moore based on his age, gender, and race, and retaliated against him in violation of the ADEA and Title VII. Specifically, Counts I and II allege a list of twenty-four discriminatory actions taken against Moore. Count III asserts retaliation based on many of the same discrete incidents. Count IV asserts a discriminatory and retaliatory hostile work environment. And Count V claims that Moore's termination was also discriminatory and retaliatory.

The last four causes of action alleged that nine individual employees of HUD conspired to obstruct justice in violation of 42 U.S.C. § 1985(2) (Count VI); conspired to deprive Moore of his rights and privileges in violation of 42 U.S.C. § 1985(3) (Count VI); and engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) (Count VIII); and that four individuals engaged in "negligence to prevent conspiracy" in violation of 42 U.S.C. § 1986 (Count VII).

On August 11, 2015, the defendants filed a motion to dismiss or, in the alternative, for summary judgment. See Defs.' Mot. to Dismiss & Mot. for Summ. J. [ECF No. 20]. They sought

to defeat all nine counts of the complaint either by dismissal under Rule 12(b)(6) for failure to state a claim or under Rule 56 on summary judgment. Plaintiff opposed the motion, arguing that he had not yet had the opportunity to engage in discovery. See Pl.'s Opp'n [ECF No. 30]. He also filed a motion to disqualify the presiding judge. See Pl.'s Mot. to Disqualify [ECF No. 53].

The Court granted in part and denied in part the defendants' motion to dismiss or, in the alternative, for summary judgment. Ultimately, Moore's allegation of a hostile work environment based on age discrimination (Count IV) was the only claim that survived. All other claims were either dismissed or summary judgment was granted to the defendant. The Court also denied Moore's motion to disqualify the presiding judge.

Moore then filed the motion at hand to vacate that judgment. See Pl.'s Mot. to Vacate [ECF No. 63]. Further proceedings on Moore's remaining claim were stayed while the motion to vacate proceeded. See July 15, 2016, Minute Order. Moore also filed an appeal of the Court's June 17, 2016 Order. Notice of Appeal [ECF No. 76]. The D.C. Circuit dismissed the appeal for lack of jurisdiction because this Court's June 17 Order was neither a final order nor subject to interlocutory appeal. See Moore v. Castro, No. 16-5361, Order (D.C. Cir. Feb. 6, 2017) (per curiam) (nonprecedential) [ECF No. 82-1]. For the reasons explained below, Moore's motion to vacate will be denied.

**LEGAL STANDARD**

Moore has styled his request as a motion for relief under Federal Rules of Civil Procedure 60(b)(3) and 60(b)(4). The former permits relief from "a final judgment, order, or proceeding" for "fraud[,] . . . misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). The latter permits relief when "the judgment is void," id. at 60(b)(4), that is, when "the rendering

4

court was powerless to enter it," Karsner v. Lothian, 532 F.3d 876, 886 (D.C. Cir. 2008) (quoting Combs v. Nick Garin Trucking, 825 F.2d 437, 442 (D.C. Cir. 1987)).

However, as the text plainly states, relief under Rule 60(b) is only available "from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b) (emphasis added); see also Isse v. Am. Univ., 544 F. Supp. 2d 25, 29 (D.D.C. 2008). The Court's June 17 Order was not final because it did not resolve all of Moore's claims. See Moore, No. 16-5361, Order (D.C. Cir. Feb. 6, 2017). Rule 60 is therefore not the proper vehicle for Moore to seek relief from the Court's judgment.

The Court will instead construe Moore's motion as one for reconsideration under Rule 54(b). A court may revise its own interlocutory orders "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); see also Cobell v. Jewell, 802 F.3d 12, 19 (D.C. Cir. 2015) (Rule 54(b) is the proper vehicle for reconsideration of an order "while a case is still ongoing in district court"). This will benefit, rather than harm, Moore because the standard for relief under Rule 54(b) is somewhat more lenient than that of Rule 60(b). See Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004).

Under Rule 54(b), a court may grant relief "as justice requires." Capitol Sprinkler Inspection, Inc. v. Guest Servs. Inc., 630 F.3d 217, 227 (D.C. Cir. 2011) (internal quotation marks omitted). Such instances include where a court has "patently misunderstood a party . . . has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." Cobell, 224 F.R.D. at 272 (alteration in original) (internal quotation marks omitted). Whether to reconsider an order is at a court's discretion, and a court need not consider arguments that it has already rejected on the merits. See Capitol Sprinkler Inspection, 630 F.3d at 225, 227.

**ANALYSIS**

Moore's motion relies primarily on arguments that were already raised and rejected on the merits in this Court's June 17 Memorandum Opinion. The Court will only briefly explain why none of these repeat arguments convince the Court to reconsider its earlier ruling.

**I.     The Motion to Disqualify**

The Court's June 17 Order denied Moore's motion to disqualify the undersigned judge. See Moore, 192 F. Supp. 3d at 33–34. The motion to disqualify was based on Moore's belief that the Court was improperly biased against him. Under 28 U.S.C. § 455(a), a judge "shall disqualify himself [or herself] in any proceeding in which his [or her] impartiality might reasonably be questioned." This inquiry employs an "objective standard," probing whether "a reasonable and informed observer would question the judge's impartiality." United States v. Cordova, 806 F.3d 1085, 1092 (D.C. Cir. 2015) (internal quotation marks omitted).

The Court denied the motion because Moore only identified disagreements with the Court's case-management procedures, rather than actions that might lead a reasonable observer to question the Court's impartiality. Moore's argument in the instant motion is almost entirely a rerun of his earlier argument. In fact, approximately five pages of his motion for reconsideration consist of verbatim quotations from his initial motion to disqualify. The Court declines to reconsider the arguments that it previously rejected. See Capitol Sprinkler Inspection, 630 F.3d at 225, 227. Moore also argues that the Court erred by only considering three reasons for disqualification, rather than all of the instances of alleged bias that he raised. But Moore is incorrect. Although the Court identified three particular incidents that Moore focused on, the Court also considered the remaining incidents that he raised. See Moore, 192 F. Supp. 3d at 33–34. The Court therefore declines to reconsider its ruling on Moore's motion to disqualify.

## II. The Motion to Dismiss and The Motion for Summary Judgment

### A. The Answer

Moore argues that the defendants failed to file a timely answer to his complaint as required by Rules 7(a), 12(a)(2), and 12(a)(3), and therefore the Court erred in granting in part the defendants' motion to dismiss and motion for summary judgment. Again, however, Moore is incorrect. Defendants filed a motion to dismiss under Rule 12(b), which tolls the time limit to answer the complaint. See Fed. R. Civ. P. 12(a)(4); Kangethe v. D.C. Dep't of Emp't Servs., 891 F. Supp. 2d 69, 71 (D.D.C. 2012) (Rule 12(a)(4) "provides that the service of a motion under Rule 12 suspends the movant's time to respond until 14 days after the court's disposition of the motion"). Moore's argument therefore has no merit—which is why this Court previously rejected it in Moore's two motions for entry of default. See Oct. 7, 2015, Order [ECF No. 38]. And in case the automatic tolling was insufficient, the Court also entered a separate stay pending resolution of the defendant's motion to dismiss. See Jan. 14, 2016, Order [ECF No. 52]. This argument, then, does not convince the Court to reconsider its June 17 Order.

### B. The February 26, 2015, Motion to Stay

On February 26, 2015, HUD filed a motion to stay all proceedings pending the conclusion of an administrative adjudication of Moore's related claims before the agency. See Feb. 26, 2015, Mot. to Stay [ECF No. 6]. In that motion, HUD stated that allowing it "to conduct a thorough investigation . . . may impact the resolution of this case by permitting the parties to potentially reach an agreement on settlement, dismissal, and/or re-examination of the claims[.]" Id. at 4. The Court granted the motion. See Mar. 31, 2015, Order [ECF No. 11].

Moore argues that HUD never thoroughly investigated his claims and never made an attempt to settle his case, and thus HUD's motion to stay was fraudulent in violation of Rule 11.

7

But HUD never claimed it would settle Moore's case, only that the resolution of his administrative claims might "potentially" allow the parties to settle. And there is no dispute that HUD conducted some internal investigation resulting in a Report of Investigation that was shared with Moore in May 2015. See Report of Investigation, Cover Letter, May 20, 2015 [ECF No. 70-1] at 2–3; Pl.'s Mot. to Vacate at 8 (acknowledging receipt of report).

But the Court need not wade through HUD's internal investigation and its representations in its motion to stay. Instead, Moore's argument fails for a simpler reason: the Court did not rely on the truth of the agency's assertions in its motion for a stay when the Court ruled on the motion to dismiss or for summary judgment. Although the Court discussed whether or not Moore exhausted his administrative remedies for some of his claims, that analysis turned on whether Moore timely raised his claims with the EEOC, not on whether HUD conducted a diligent investigation through its own internal departmental Equal Employment Opportunity Division. See Moore, 192 F. Supp. 3d at 37–40.

### C. The Report Of Investigation

Continuing on the same theme, Moore argues that the Report of Investigation that HUD provided him with contains false information and relies on inaccurate government records that do not reflect the fact that he was eligible for veterans' preference in hiring. This argument fails for the same reasons as the last: the Court did not rely on HUD's Report of Investigation in its June 17 decision. However, any falsehoods in that report do not present a persuasive reason to reconsider the Court's prior Order.

To the extent that Moore uses the Report of Investigation to reiterate his claims about the agency's treatment of his eligibility for veterans' preference, the Court already rejected those claims in its June 17 decision. HUD admitted that it erroneously classified Moore as not eligible

for veterans' preference. See Moore, 192 F. Supp. 3d at 51. However, even if HUD intentionally falsified his document with respect to veterans' preference eligibility, Moore suffered no change in his employment benefits as a result. Id. at 51–52. Moore presents no new law or facts on this issue that persuade the Court to reconsider its prior determination.

### D. Service of The Complaint

In their motion to dismiss, the individual defendants argued, in the alternative, that the Court lacked personal jurisdiction over them because Moore failed to properly serve them with the complaint in conformance with Rule 4. Moore now argues that he did properly serve them, and therefore the individual defendants' arguments were fraudulent. But the Court did not rely on the individual defendants' argument regarding personal jurisdiction. See Moore, 192 F. Supp. 3d at 35 n.3. This argument thus provides no support for Moore's attempt to gain relief from this Court's June 17 decision.

### E. The Individual Defendants' Representation

The individual defendants were represented by the Department of Justice. See 28 C.F.R. § 50.15 (requiring government representation for federal employees who are sued in their individual capacities for actions within the scope of their employment). Moore argues that to obtain this representation, the individual defendants must have been served with the complaint—and therefore that they either lied to the Court when they stated otherwise in their motion to dismiss, or lied to the Department of Justice and fraudulently obtained representation.

Moore's argument misunderstands 28 C.F.R. § 50.15. There is nothing in that regulation that prohibits federal employees from requesting representation when they become aware of a lawsuit against them that has not yet been served. Indeed, that appears to be what happened in this case: HUD's office of general counsel alerted the individual defendants of the lawsuit, then

9

coordinated the representation request that was sent to the Department of Justice with attached letters from the individual defendants requesting representation. See Requests for Representation [ECF No. 70-1] at 5–7. Moore's argument on this point has no merit. Moreover, Moore has failed to show how this allegation (even if true) would support his request for relief from the Court's June 17 decision.

### F. False Statements, Doctored Affidavits, And Moore's Request For Discovery

Moore argues that defendants' statement of undisputed facts in support of their motion for summary judgment was based on lies, and thus he is entitled to relief. But Moore does not point to newly discovery evidence, for example, that indicates that defendants made fraudulent statements. Rather, he repeats claims that he made in his opposition to defendants' dispositive motions. These claims amount to conclusory statements that defendants' affidavits are false. "[C]onclusory assertions offered without any evidentiary support do not establish a genuine issue for trial." Gurara v. District of Columbia, 881 F. Supp. 2d 143, 147 (D.D.C. 2012). If Moore believes now (or believed at the time) that defendants' statements were false, he was obligated to point to evidence creating genuinely disputed issues of material fact regarding the truth of those statements. See Fed. R. Civ. P. 56. If he believed then or believes now that he needed further discovery to explain to the court why there were genuine disputes of material fact, then he was obligated to sufficiently explain that need to the Court. He did not do either at the time (as discussed below), nor does he do so now. The Court rejected these same allegations that defendants lied in its prior decision, and Moore has presented no new law or facts that lead it to a different conclusion now.

Moore argues that the Court improperly denied him the opportunity to undertake discovery prior to ruling on the motion for summary judgment—discovery which, presumably he believes,

10

would have demonstrated that defendants' evidence was false.  Moore raised this argument in his opposition to the motion to dismiss or for summary judgment.  A court may deny a motion for summary judgment, or delay ruling on the motion, if the nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  To obtain this relief, the affidavit seeking additional discovery must (1) "outline the particular facts [the nonmoving party] intends to discover and describe why those facts are necessary to the litigation"; (2) "it must explain" why the nonmoving party could not produce those facts in opposition to the summary judgment motion; and (3) "it must show that the information is . . . discoverable."  Convertino v. Dep't of Justice, 684 F.3d 93, 99–100 (D.C. Cir. 2012).

Moore did not submit any such affidavit prior to the Court's ruling on the motion for summary judgment.  Nonetheless, the Court looked to additional filings in the case to determine if Moore provided the necessary information in a different format.  See Moore, 192 F. Supp. 3d at 50–51.  The Court determined that he did not even meet the first criterion.  Moore's argument in the motion at hand contains the same fatal flaw: he does not identify what particular information he believed he would have discovered, much less begin to broach the last two criteria.  Indeed, many of Moore's arguments on this point now are simply a verbatim recitation of the arguments he previously raised.  The Court is therefore not persuaded to reconsider its prior decision on this point.

Moore does challenge one particular piece of evidence that defendants introduced as fraudulent.  In attempting to prove his discrimination claim (Count V), Moore identified several other PMFs who he believed were similarly situated but were treated differently than he was due to their race, sex, or age.  See Exs. 2–11 to Pl.'s Opp'n [ECF No. 31-1] at 4–23.  In response,

defendants submitted evidence attempting to show that these other PMFs were not similarly situated. This evidence included an affidavit from a supervisor at HUD, Brian Ruth. See Ex. FF, Ruth Aff. [ECF No. 40-1] at 10–13. Attached to Ruth's affidavit was a summary chart showing the differences between Moore and the other individuals, which was prepared by defendants (not by Ruth). See id. at 9. Moore argues that defendants' use of this chart was fraudulent because it was not created by the affiant, and thus violated of 18 U.S.C. § 1512, which makes it a crime to tamper with a witness's testimony. Moore misunderstands how this evidence was used. A demonstrative exhibit that summarizes other admissible evidence is permitted under the Federal Rules of Evidence. See Fed. R. Evid. 1006. Defendants here never falsely indicated that Ruth himself created the chart. Rather, Ruth (and other affiants and documents) provided support for defendants' summary chart. The use of this exhibit was not improper or in violation of 18 U.S.C. § 1512.

### G. Procedural Irregularities

Moore argues that there were a number of procedural irregularities that entitle him to the relief he seeks. However, none of the so-called irregularities that he identifies were improper, and even if they were, they would not lead the Court to believe that justice required reconsideration of the substance of its June 17 Order.

Moore first argues that defendants' reply brief in support of their motion to dismiss and motion for summary judgment was in fact a supplemental motion to dismiss and therefore the defendants should have obtained the Court's leave before filing it. Local Civil Rule 7(d) states that a moving party is entitled to file a reply brief, and Federal Rule of Civil Procedure 27(a)(4) specifies that "[a] reply must not present matters that do not relate to the response." Defendants' reply brief fit within these parameters, and thus did not require the Court's leave to be filed.

Moore also argues that defendants acted improperly by failing to hold a case management conference or file a case management report. See Fed. R. Civ. P. 26(f) (case management conference); Local Civil Rule 16.3(a) (case management conference) & (d) (case management report). But the case management conference and subsequent report are designed to allow the parties to plan for discovery, which generally does not continue while a dispositive motion is pending. Chavous v. D.C. Financial Responsibility & Mgmt. Assistance Auth., 201 F.R.D. 1, 2 (D.D.C. 2001). Here, defendants filed their dispositive motions on September 22, 2015. See Defs.' Mot. to Dismiss & Mot. for Summ. J. [ECF No. 20]. In addition to responding to defendants' motions on the merits, Moore raised this same point about discovery in a separate motion for sanctions. See Pl.'s Mot. for Sanctions [ECF No. 46] at 1, 3. The Court then issued an order clarifying that discovery generally does not continue while a dispositive motion is pending, and to avoid any confusion on the matter, the Court entered a stay, explaining that "it is appropriate to stay the initiation of discovery as well as the Rule 26(f) conference and Rule 16(b) scheduling order pending resolution of defendants' motion to dismiss." Order, Jan. 14, 2016, at 2. Moore's arguments here, then, are the same ones that have already been raised and rejected.

Moore presents no new law or facts to persuade the Court to reconsider its prior case management decisions, and certainly none that persuade the Court that these case management decisions provide a basis to reconsider its June 17 Order.

### H. The Court's Power To Dispose of Claims

Finally, Moore argues that the Court acted improperly by resolving most of his claims via dispositive motions when his Amended Complaint requests a jury trial. But Moore misunderstands how dispositive motions operate under the Federal Rules of Civil Procedure. A court may resolve a claim on a motion to dismiss when, among other reasons, the plaintiff has "failed to state a claim

13

upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), and may resolve a claim on summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). The fact that a plaintiff requested a jury trial is not relevant: in the former instance, there are no claims for which a jury could find for the plaintiff even if his or her allegations were true; in the latter instance, there are no disputed issues of fact for the jury to decide. Indeed, federal courts have long recognized that "[n]otwithstanding the existence of legal claims triable by jury, a grant of summary judgment in whole or in part may leave no material issues for a jury to try." Nat'l Life Ins. Co. v. Silverman, 454 F.2d 899, 906 (D.C. Cir. 1971). This is why "[s]ummary judgment procedure is properly regarded . . . as an integral part of the Federal Rules as a whole." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). When there are no issues for a jury to decide—because the plaintiff has not stated a claim or because there are no genuine disputes of material fact—resolving claims through dispositive motions promotes the "avoidance of long and expensive litigation productive of nothing, and curb[s] the danger that the threat of such litigation will be used to harass or to coerce a settlement." Washington Post Co. v. Keogh, 365 F.2d 965, 968 (D.C. Cir. 1966). The Court acted properly in resolving all but one of Moore's claims through dispositive motions.

## CONCLUSION

Recognizing his pro se status, and even construing his motion under the relatively more lenient standard of a motion for reconsideration under Rule 54(b), Moore has failed to convince the Court that justice requires reconsideration of any aspect of the June 17, 2016 Order and accompanying Memorandum Opinion. For the foregoing reasons, the Court will deny [63] plaintiff's motion to vacate. A separate Order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: May 3, 2017