| | |
|---|---|
| ANDREW P. MOORE,<br><br>      Plaintiff,<br><br>      v.<br><br>BENJAMIN S. CARSON, Secretary, U.S. Department of Housing and Urban Development,<br><br>      Defendant. | Civil Action No. 14-2109 (JDB) |

# MEMORANDUM OPINION

Andrew Moore, a former employee of the U.S. Department of Housing and Urban Development ("HUD"), is an African-American man over sixty-seven years old. He alleges that while he was employed at HUD, the agency took adverse employment actions against him because of his race, sex, and age and in retaliation for filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). The Court previously entered summary judgment in HUD's favor on all of Moore's claims but one: his claim that HUD subjected him to a hostile work environment because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. The parties have now filed cross-motions for summary judgment on that claim and, for the reasons that follow, Moore's summary judgment motion will be denied, and HUD's will be granted.

## BACKGROUND

### I. FACTUAL BACKGROUND

The facts of this case are explained more fully in the Court's prior decisions. See Moore v. Castro ("Moore I"), 192 F. Supp. 3d 18, 31–32 (D.D.C. 2016); Moore v. Carson ("Moore II"),

Civil Action No. 14-2109 (JDB), 2017 WL 1750248, at *1 (D.D.C. May 3, 2017). Thus, the facts are summarized here only briefly.

In 2014, Moore was selected as a finalist for the Presidential Management Fellowship ("PMF") by the Office of Personnel Management. Moore I, 192 F. Supp. 3d at 31. Moore then interviewed with HUD and was hired for what he believed to be a "management position." Id. However, when Moore began the job in April 2014, he was disappointed to discover that he had been hired as a building inspector rather than a manager. Id. He was also disappointed that other PMF employees with less education and management experience had been assigned to higher pay grades. Id. at 31–32.

According to Moore, HUD hired him as a PMF and then pushed him into a lower-paying job for which he was less qualified because of his race, gender, and age. See Am. Compl. [ECF No. 12] ¶¶ 61, 66, 126(a). Moore claims that this discrimination continued throughout his employment and culminated later in 2014, when three of his supervisors "made offensive and insulting remarks or comments suggesting that Moore worked too slow, suffered from a memory loss, had a learning inability, and could not sufficiently comprehend . . . because of his age." Id. ¶ 88. Moore was fired from HUD on September 24, 2014 on what he alleges were "false trumped-up charges." Id. ¶¶ 107–08.

## II. PROCEDURAL BACKGROUND

After filing two Equal Employment Opportunity ("EEO") complaints and an EEOC age discrimination claim, Moore brought suit in this court on December 11, 2014. See id. ¶¶ 17, 19. The defendants (who originally included nine individual HUD employees, as well as then-Secretary of HUD Julian Castro) moved to dismiss or, in the alternative, for summary judgment. See Defs.' Mot. to Dismiss & Mot. for Summ. J. [ECF No. 20]. Moore opposed the motion,

arguing that he had not yet been able to engage in discovery, and moved to disqualify the undersigned judge. See Pl.'s Resp. to Defs.' Mot. to Dismiss & Mot. for Summ. J. [ECF No. 29] at 18–19; Pl.'s Mot. to Disqualify [ECF No. 53]. The Court granted in part and denied in part defendants' motion and denied Moore's disqualification motion. See Moore I, 192 F. Supp. 3d at 34, 54. Following the Court's partial grant of summary judgment for defendants, Moore's only surviving claim was one alleging a hostile work environment in violation of the ADEA. See id. at 54.

Moore then moved to vacate the Court's June 17, 2016 Order. See Pl.'s Mot. to Vacate [ECF No. 63]. The Court held Moore's motion in abeyance pending his simultaneous appeal of that Order, which the D.C. Circuit ultimately dismissed for lack of jurisdiction. See Moore v. Castro, No. 16-5361, Order (D.C. Cir. Feb. 6, 2017) (per curiam) (unpublished). Following that appeal, this Court denied Moore's motion to vacate. Moore II, 2017 WL 1750248, at *7.

The remaining ADEA claim proceeded to discovery, and Moore later moved for summary judgment. See Pl.'s Mot. for Summ. J. [ECF No. 92]. HUD filed a consolidated opposition and cross-motion for summary judgment, which Moore now opposes. See Mem. of Law in Supp. of Def.'s Cross-Mot. for Summ. J. & Resp. to Pl.'s Mot. for Summ. J. ("Def.'s Opp'n") [ECF No. 107]; Pl.'s Opp'n to Def.'s Cross-Mot. for Summ. J. ("Pl.'s Opp'n") [ECF No. 108]; Pl.'s Reply Mem. in Supp. of Mot for Summ. J. ("Pl.'s Reply") [ECF No. 110]. The parties' motions are now fully briefed and ripe for decision.[1]

---

[1] Moore has also filed a motion for entry of final judgment [ECF No. 111] claiming that the Court failed to enter judgment on a separate document pursuant to Federal Rule of Civil Procedure 58(a) when it issued its June 17, 2016 decision. But this judgment was in fact entered on a separate document. See June 17, 2016 Order [ECF No. 60]. Moore's motion also seeks judgment on the pending motions for summary judgment, which the Court resolves here. The motion for entry of judgment will therefore be denied to the extent that it challenges the Court's June 17, 2016 decision and denied as moot to the extent that it seeks a decision on the pending motions for the purpose of appealing the June 17, 2016 order.

## LEGAL STANDARD

A party is entitled to summary judgment where the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56). On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). To survive a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. Rather, that party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Id. (citation omitted).

## DISCUSSION

Moore's summary judgment briefing raises several threshold issues, some of which the Court has already resolved in its prior decisions. The Court will address these threshold arguments first, before turning to the merits of the parties' competing summary judgment motions on Moore's hostile work environment claim under the ADEA.

### I. MOORE'S THRESHOLD ARGUMENTS

#### A. HUD Did Not Constructively Admit the Allegations in Moore's Complaint

First, Moore claims that he is entitled to summary judgment against some or all of the defendants because, for various reasons, the defendants constructively admitted the allegations in the complaint. For example, Moore claims that HUD has admitted all of the allegations in his complaint because it failed to file a proper responsive pleading. Pl.'s Mot. for Summ. J. at 4. He

4

claims that the answer filed by Assistant U.S. Attorney Scott Sroka on behalf of HUD is "legally unauthorized" because Sroka is not a member of the Bar of this Court. Id. at 4–5 (citing Local Civ. R. 83.2(c)–(e)). However, Local Civil Rule 83.2(e) permits an attorney "who is employed or retained by the United States" to "practice in this Court on behalf of the United States . . . irrespective of" limitations based on local Bar admission, so this claim is without merit. Moore also asserts that the nine individual defendants named in his Amended Complaint failed to respond. Id. at 4. But this Court has already dismissed all claims against them, eliminating the need for a further response. See Moore I, 192 F. Supp. 3d at 35. Finally, Moore contends that HUD conceded the allegations in his motion for summary judgment by failing to file an opposition and "[i]nstead fil[ing] [a] cross-motion for summary judgment twice . . . to substitute it as an Opposition." Pl.'s Reply at 2; see also Pl.'s Opp'n at 11–12. But HUD filed a consolidated opposition and motion for summary judgment, as the Court directed in its October 30, 2017 Scheduling Order. See Oct. 30, 2017 Scheduling Order [ECF No. 101]. In sum, because no defendant has conceded Moore's allegations, he is not entitled to summary judgment on this ground.

      **B.**      <u>**HUD Properly Relied on Moore's Deposition Transcript**</u>

Moore also contends that the government cannot rely on his deposition because he was "never notified by the court reporter that the deposition transcript was available to review" and because the "first and only time [he] had an opportunity to review it" was after HUD filed its cross-motion. Pl.'s Opp'n at 9. Thus, he asks the Court to strike the deposition. See id.

Federal Rule of Civil Procedure 30(e) provides that, "[o]n request by the deponent or a party before [a] deposition is completed, the deponent must be allowed 30 days after being notified . . . that [a] transcript . . . is available in which . . . to review the transcript." Fed. R. Civ.

P. 30(e)(1)(A). Then, if the deponent wishes to make "changes in form or substance," he or she must be allowed "to sign a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e)(1)(B); see EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 266 (3d Cir. 2010) ("If the party or deponent proffering changes in the form or substance of a deposition transcript fails to state the reasons for the changes, the reviewing court may appropriately strike the errata sheet."). Rule 30(e) also requires the officer conducting the deposition to "note in the certificate" of the deposition's accuracy "whether a review was requested." Fed. R. Civ. P. 30(e)(2).

Here, the court reporter's certificate does reflect that "a review of the transcript was requested." See Dep. of Andrew Moore ("Moore Dep.") [ECF No. 106-2] at 95:8. However, even assuming that the court reporter improperly failed to notify Moore that the transcript was available for review, Moore has not shown that the deposition should be stricken. Contrary to Rule 30(e)'s instructions, Moore has neither "list[ed] the changes" he would make to the transcript nor stated "the reasons for making them"; rather, he simply states that he "does not agree with every transcription in the deposition." Pl.'s Opp'n at 9; see Jackson v. Local Teamsters Union 922, 310 F.R.D. 179, 183, 185 (D.D.C. 2015) (concluding that substantive changes to a deposition transcript require "convincing," as opposed to merely "conclusory," explanations). Because Moore has failed to identify the specific changes he would make to his testimony—let alone the reasons supporting those changes—his request to strike the deposition transcript will be denied. See Hollis v. Sloan, No. 2:08-cv-2674, 2012 WL 5304756, at *3 (E.D. Cal. Oct. 25, 2012) (denying a plaintiff's motion to strike his deposition even though the court reporter had concededly failed to notify him that a transcript of the deposition was available for review, where the plaintiff had not "identified any alleged errors or inaccuracies" in the transcript and "was subsequently accorded the opportunity to make corrections, but declined to [do] so").

## C. The ADEA Does Not Guarantee Moore a Jury Trial

Next, Moore argues that HUD's motion for summary judgment should be denied "because whether or not a willful violation of the ADEA has occurred is a question for the jury to decide, not the district court." Pl.'s Opp'n at 9–10 (citing 29 U.S.C. § 626(c)). The section of the ADEA to which Moore refers states that a plaintiff alleging age discrimination is "entitled to a trial by jury of <u>any issue of fact</u> in any such action." 29 U.S.C. § 626(c)(2) (emphasis added). On a motion for summary judgment, a court's role is to evaluate whether there <u>are</u> issues of fact such that the case should proceed to the jury or whether instead the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>see</u> <u>Celotex</u>, 474 U.S. at 322. Moore is not entitled to a jury trial on his ADEA claim unless this Court determines that there are genuine issues of material fact—and here there are none. Thus, this provision does not provide grounds for denying HUD's cross-motion for summary judgment.

## D. Moore Has Not Properly Alleged Discrimination Based on Veteran Status

In his summary judgment briefing, Moore claims that HUD "deviated from its normal processes and procedures" by hiring non-veterans as PMF fellows before him, and that this deviation gives rise to a "discriminatory inference" such that summary judgment for HUD is inappropriate. Pl.'s Opp'n at 2, 10. But Moore's amended complaint did not include a claim for disparate treatment based on veteran status. <u>See</u> Am. Compl. ¶¶ 60, 65 (stating claims for disparate treatment based on age, race, and gender). Because Moore did not raise this claim in his pleadings, this Court will not consider it further here as an independent claim for relief. <u>See</u> <u>Gonzalez v. Holder</u>, 763 F. Supp. 2d 145, 149 n.1 (D.D.C. 2011) (refusing to address a plaintiff's attempt to raise a new claim in his opposition to a motion to dismiss).

### E. Moore Is Not Entitled to Discovery on His Dismissed Claims

Finally, Moore claims that HUD's "reliance and use" of the Court's Order and Memorandum Opinion from June 17, 2016 "further violates Plaintiff Moore's Due Process Rights." Pl.'s Opp'n at 2. This argument stems from Moore's earlier allegations that he was denied "an adequate opportunity for discovery" before some of his claims were dismissed and partial summary judgment was entered. Id. at 31–32; Pl.'s Mot. to Vacate at 18–19. In the June 17, 2016 Memorandum Opinion, this Court held that, "even at this early stage, a district court may deny a request for discovery and grant a motion for summary judgment when the non-moving party 'offer[s] no reasonable basis to suggest that discovery' will bear out its claims." Moore I, 192 F. Supp. 3d at 48 (citation omitted). The Court ultimately determined that several of Moore's claims did not warrant discovery. Id. at 51–53. "Whether to reconsider an order is at a court's discretion, and a court need not consider arguments that it has already rejected on the merits." Moore II, 2017 WL 1750248, at *3 (citing Capitol Sprinkler Inspection, Inc. v. Guest Servs. Inc., 630 F.3d 217, 225, 227 (D.C. Cir. 2011)). Because this Court has twice previously considered Moore's objections, it declines to do so again here. See Moore I, 192 F. Supp. 3d at 48, 51–53; Moore II, 2017 WL 1750248, at *5–6. HUD's use of this Court's earlier orders and memorandum opinions to support its cross-motion was proper.

## II. MOORE'S ADEA HOSTILE WORK ENVIRONMENT CLAIM

The Court turns now to Moore's sole remaining claim, which alleges that HUD subjected him to a hostile work environment because of his age. The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his . . . terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). An employer violates this statutory command when, among other things, it creates a hostile work environment

based on an employee's age. See Baloch v. Kempthorne, 550 F.3d 1191, 1195, 1201 (D.C. Cir. 2008).

To prevail on a hostile work environment claim, a plaintiff must prove "that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Baloch, 550 F.3d at 1201 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). In determining whether a hostile work environment exists, the court must consider the totality of the circumstances, "including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." Id. This analysis is both subjective and objective: "no violation is present 'if the victim does not subjectively perceive the environment to be abusive' or if the conduct 'is not severe or pervasive enough to create an objectively hostile or abusive work environment.'" Ware, 80 F. Supp. 3d at 226 (quoting Harris, 510 U.S. at 21–22). The plaintiff must also show "some connection between the alleged abuse and the plaintiff's protected status." Golden v. Mgmt. & Training Corp., 266 F. Supp. 3d 277, 286 (D.D.C. 2017); see also McKeithan v. Boarman, 803 F. Supp. 2d 63, 70 (D.D.C. 2011) (plaintiff's hostile work environment claim dismissed because he "offer[ed] nothing to support a claim that any of [supervisor]'s conduct was linked to his age").

Here, Moore alleges three specific occurrences of verbal harassment:

On April 28, 2014, Dilip Patel "verbally reprimanded, humiliated, degraded, and embarrassed Moore in front of a building inspector and others because Moore did not know what a 'GFI' was."

On May 20, 2014, Jose Bosque-Perez "verbally reprimanded him for errors on reports . . . , scolded him that he should have known by then how to complete the reports, placed his hand in front of Moore's face to silence him . . . , ordered Moore to look at him when he is talking, and escalated the situation to the point where Moore began crying."

9

> From June 2014 through September 2014, Dilip Patel, Brian Ruth, and Delton Nichols, respectively, made offensive and insulting remarks or comments suggesting that Moore worked too slow, suffered from a memory loss, had a learning inability, and could not sufficiently comprehend the exercises in the UPCS [Uniform Physical Condition Standards] Inspection Certification Training because of his age.

Moore I, 192 F. Supp. 3d at 46–47 (quoting Am. Compl. ¶¶ 86, 88, 92).

In its prior opinion, the Court doubted "that the first two examples offered by Moore—workplace reprimands, more or less—are enough to show a hostile work environment." Id. at 47 (citing Rattigan v. Gonzales, 503 F. Supp. 2d 56, 82 (D.D.C. 2007) ("Plaintiff must show far more than . . . occasional off-color remarks or criticisms, and snubs or perceived slights to establish a hostile work environment.")). And although the Court concluded that the third alleged instance of verbal harassment was sufficient to survive a motion to dismiss, it noted that "the parties' evidence may reveal that the alleged misconduct does not rise to the level of severity or pervasiveness called for by the law or was not discriminatory" and suggested that "further details regarding these alleged incidents" would ultimately be necessary to determine "whether Moore's offensive working conditions . . . were sufficiently severe or pervasive." Id. at 47, 54 (citing Na'im v. Rice, 577 F. Supp. 2d 361, 378 (D.D.C. 2008) (denying summary judgment where both parties failed to specify the frequency of the alleged derogatory remarks)).

Now, following discovery and full summary judgment briefing, Moore has failed to present the "further details" needed for his ADEA hostile work environment claim to survive HUD's summary judgment motion—let alone to demonstrate that he himself is entitled to summary judgment. The evidence presented by HUD in connection with its cross-motion for summary judgment reinforces this conclusion. The Court will address each party's evidence in turn.

A.     **Moore's Evidence Does Not Establish a Genuine Issue of Material Fact**[2]

Moore's exhibits include travel receipts (Pl.'s Exs. 134–48), military service records (Pl.'s Exs. 36–39, 41–46), educational transcripts and diplomas (Pl.'s Exs. 19–33, 40), and copies of EEO, EEOC, and internal HUD reports (Pl.'s Exs. 66–72, 104–08, 110–12, 118, 128–33, 228). Because the sole remaining claim before this Court is the allegation of a hostile work environment from June to September of 2014, however, the only relevant exhibits are emails sent during that period.

Moore's evidence of the alleged hostility begins with a series of emails he exchanged with Dedra Carey, a HUD employee in charge of PMF training. See Pl.'s Ex. 115. On May 28, 2014, Carey granted Moore an extension for the submission of his "performance plan," a PMF requirement. Id. at 4. Moore replied to Carey (and copied his supervisors) on June 10, 2014, explaining that he was unable to write his plan because none of his supervisors would assist him. Id. at 2. Moore stated that his email was "an urgent request to be transferred from an obviously extremely hostile work environment" and referred to the two individual instances of abusive conduct alleged in his complaint. Id.; see Am. Compl. ¶¶ 86, 92. Later that day, Carey informed Moore that she was forwarding the email to another official for "review, discussion and consideration of the appropriate corrective actions to take regarding your claim." Pl.'s Ex. 115 at 1. Moore's exhibits reflect no further communication until June 24, 2014 when he again emailed Carey (and copied a larger list of other HUD employees) "requesting that corrective action be taken." Pl.'s Ex. 116 at 1. On June 25, 2014, Moore received a reply from another HUD employee assuring him that his hostile work environment claim was being addressed. Pl.'s Ex. 117.

---

[2] Unless otherwise indicated, the exhibits cited in this section are to plaintiff's motion for summary judgment, filed as follows: Pl.'s Exs. 1–21 [ECF No. 94]; Pl.'s Exs. 22–46 [ECF No. 95]; Pl.'s Exs. 47–72 [ECF No. 96]; Pl.'s Exs. 73–114 [ECF No. 97]; Pl.'s Exs. 115–132 [ECF No. 98]; Pl.'s Exs. 133–171 [ECF No. 99]; Pl.'s Exs. 172–235 [ECF No. 100].

While an investigation of these claims was pending, Moore exchanged emails with his "first-line" supervisor (Dilip Patel), higher-ranking supervisors, and information technology workers at HUD about his attempts to pass required online trainings. See Pl.'s Exs. 103, 149–82. Beginning on June 19, 2014, Moore's only assigned task was "finishing up [his] UPCS online training from home." Pl.'s Ex. 154-A. From June 19, 2014 to around September 15, 2014, Moore tried to complete this training. See generally Pl.'s Exs. 149–83. The emails reflect Patel's growing sense of urgency that Moore complete this task. See, e.g., Pl.'s Ex. 149 (from Patel to Moore on June 23, 2014: "As of now how many UPCS Exercises [have] you [] completed—date and time. And how many more [do] you have to complete. . . . So I can prepare please let me know. Thx."). They also show that Moore missed deadlines because of failures to meet grade cutoffs and frequent technical problems accessing the training software. See, e.g., Pl.'s Exs. 154-B, 155.

As weeks passed, Patel expressed increasing concern with Moore's lack of progress and failure to meet deadlines. See, e.g., Pl.'s Ex. 164 (from Patel to Moore on July 15, 2014: "As per existing system, you have to complete the three mandatory courses . . . by 8/05/2014. . . . [Computer s]ystem is fine and working. Thx."). Deadlines came and went, and Patel created a "Performance Plan for about the next three months" to give Moore "the maximum possible allowable time to complete the training." Pl.'s Ex. 172 (from Patel to Moore on July 31, 2014). On September 8, 2014, while Moore's only task continued to be passing the required courses, Patel emailed Moore about improper entries on his timesheet:

> [the timesheet software] is not a tool writing long descriptions but to show assigned work accomplished each day as sch[eduled]. I don't want to know what MPSB appeal case and responses you are referring to but your first priority or goal is to complete the [] training . . . . Your [timesheet] clearly shows that you have not worked on [] training for above 2.5 days. . . . Also include how many times you have attempted each remaining/current [] exercise . . . till you pass. Again, I strongly suggest that your first priority [be] to complete the [] training. . . . If you have any estimate time when you are going to complete remaining exercises, please

12

let me know. And if there [is] anything Rich or I can assist, let us know as well. We are always ready to help you. . . . Thx.

Pl.'s Ex. 184 at 2–3.[3] Moore replied that he was "embarrassed and humiliated" that he was "being monitored and tracked [] like a wild animal," but he agreed to change his timesheet to reflect time spent on assigned tasks and stated that he would do "whatever is necessary within the perimeters [sic] of the law to prevent the imminent wrongful termination of [his] employment," which he "believe[d] [he was] being set up for." Id. at 1. After weeks passed without Moore successfully completing the required online training, HUD terminated Moore's employment on September 24, 2014. Pl.'s Ex. 230 at 1–3 (reasons for firing included, among other things, failure to submit accurate timesheets, "lack of interest in learning," and failure to meet deadlines or communicate about how much additional time he needed).

To succeed on a hostile work environment plaintiff must show that he was subjected to "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to . . . create an abusive working environment." Baloch, 550 F.3d at 1201 (citations omitted). But none of the emails or other evidence from June to September of 2014 contain the "offensive and insulting" language claimed in Moore's complaint. See Am. Compl. ¶ 88. Indeed, Moore has submitted no evidence demonstrating that his supervisors engaged in any conduct "severe or pervasive enough to create an objectively hostile or abusive work environment." Ware, 80 F. Supp. 3d at 226 (citation omitted). Instead, the emails Moore relies on more closely resemble the kind of "ordinary tribulations of the workplace" that courts have refused to police. Id. at 227

---

[3] The "appeal case and responses" Moore referred to in his timesheet were apparently part of Moore's August 8, 2014 appeal to the Merits Systems Protection Board ("MPSB") after the denial of a separate complaint he filed with the Department of Labor, in which Moore argued that HUD discriminated against him by incorrectly stating that he had no prior creditable military service. See Ex. D to Defs.' Notice of Filing Exs. [ECF No. 22-1]; Moore I, 192 F. Supp. 3d at 51–52.

(citation omitted).  Although Patel clearly wanted Moore to complete his training and meet deadlines, he did not disparage Moore's progress or insult him—to the contrary, he offered help. See, e.g., Pl.'s Ex. 154-B at 1 (From Patel to Moore on July 2, 2014: "Please send me an email if you have any questions on Ex. 300 . . . . Thx."); Pl.'s Ex. 184 at 3 (From Patel to Moore on September 8, 2014: "We are always ready to help.").  These emails demonstrate that Moore was under pressure, but not that he was subjected to an abusive work environment.

In addition, these emails neither state nor imply that Moore "suffered from a memory loss, had a learning inability, [or] could not sufficiently comprehend" because of his age or otherwise. Am. Compl. ¶ 88.  Because an ADEA plaintiff must draw "some connection between the alleged abuse and the plaintiff's protected status," Golden, 266 F. Supp. 3d at 286, and because Moore's evidence does not create such a connection, he has failed to raise a genuine issue of material fact, see id.  Accordingly, Moore's evidence is insufficient to support his motion for summary judgment; instead, the lack of evidence supports HUD's motion for summary judgment.

**B.     HUD's Evidence Confirms the Absence of a Genuine Issue of Material Fact**

During his deposition, Moore recounted the two specific instances of alleged discrimination that appeared in his complaint: confrontations between himself and Patel, see Moore Dep. at 36:16–62:20, and himself and another supervisor, Jose Bosque-Perez, see id. at 62:22–66:21, 75:4–15.  See Am. Compl. ¶¶ 86, 92.  When asked for more detail on the third allegation (abusive conduct from June to September 2014), Moore referred to and read from his amended complaint.  Moore Dep. at 71:3–6 ("Q. Between June 2014 and September 2014, what offensive and insulting remarks [were made] . . . towards you?  A. As stated in my amended complaint, sir.  You want me to read it again?").

When pressed, Moore cited a conversation between himself and two supervisors sometime between June and September of 2014. Id. at 72:2–74:11. During this conversation, Moore claims that his supervisors implied "that the reason why [he] was having such a difficult time in completing the exercises . . . was because [he] had a memory loss . . . and that [he] was too old." Id. at 71:11–15. This alleged conversation, like the two individual instances alleged in Moore's complaint, is insufficient to support a hostile work environment claim. See Moore I, 192 F. Supp. 3d at 46 (citing Franklin v. Potter, 600 F. Supp. 2d 38, 77 (D.D.C. 2009) ("Cobbling together a number of distinct, disparate acts will not create a hostile work environment, because discrete acts constituting discrimination or retaliation claims are different in kind from a hostile work environment claim." (alterations omitted))). Moore was also unable to provide a date for this conversation, and no record of it appears in Moore's exhibits. Moore Dep. at 73:19–25.

Other than this alleged additional incident, Moore was unable to recount specific instances of being harassed or criticized for his age:

> Q. What other times did they say you were too old?
> A. There was other times that I do not remember the dates, sir.
> Q. But can you give me a circumstance?
> A. Well the circumstances is that they . . . [were] applying pressure on me.
> Q. How?
> A. By sending me e-mails. Okay. I got the e-mails . . . of incidents – of many instances where they put pressure on me.
> . . .
> Q. But how did they put pressure on you?
> A. By constantly sending me emails.

Id. at 76:7–77:9. When pressed for examples of pressuring emails mentioning his age, Moore responded, "I don't have them in front of me. . . . But you will get a copy of it very soon." Id. at 79:20–22.[4] Moore also referred to remarks not contained in emails, but stated, "once again, I

---

[4] HUD requested copies of these emails during the deposition and claims that Moore has not provided them. Moore Dep. at 81:5–82:3; Def.'s Opp'n at 6 & n.3, 11–12. Moore maintains that the emails attached to his Motion

don't have that information in front of me because I have written a lot of notes and . . . I'm locating a whole bunch of other different documents." Id. at 84:2–7. No further documentation of references to age was produced.

The other alleged abuse that Moore described during his deposition was in phone conversations where Patel "screamed . . . and hollered . . . . [I]t was really, really bad; very, very bad." Id. at 54:7–8. Moore first explained that Patel "was basically angry at me because I was working too slow." Id. at 54:3–4. However, Moore later claimed that Patel's frustration was "a pretext" and that the real reason for the alleged "screaming" was Moore's "race and . . . age." Id. at 58:10–23. Moore could not explain why he believed Patel's frustrations were animated by his age but referred again to the allegations in his complaint: "Q. So what is your conclusion based on? . . . A. My allegation, sir, in my lawsuit and I reiterate them here . . . that he . . . aimed a hostile work environment against me because of my age and my race." Id. at 59:3–10. Despite repeated questions, Moore was unable to explain why he believed that Patel's frustration with his work was pretext for age discrimination. See id. at 59:11–62:6. Thus, HUD correctly claims that Moore has not supported his allegations beyond recounting specific critiques and "then add[ing] 'because of my age' at the end." Defs.' Opp'n at 12.

In short, Moore's allegations of severe and pervasive abuse are no more detailed now than they were when this Court suggested in June 2016 that more information would be necessary to survive summary judgment. See June 17, 2016 Mem. Op. at 41. Because the exhibits before the Court do not demonstrate severely abusive conduct and neither mention nor even allude to Moore's age, they are insufficient to support his claim of a hostile working environment. See Ware, 80 F.

---

for Summary Judgment are the same emails that he promised to HUD during his deposition. Pl.'s Resp. to Def.'s Undisputed Material Facts [ECF No. 109] at 3–4.

Supp. 3d at 229 (finding that "allegations 'of disparaging remarks and other negative comments do not sufficiently demonstrate a significant level of offensiveness'" (citation omitted)); McKeithan, 803 F. Supp. 2d at 70 (dismissing case where plaintiff "allege[d] only that he suffered as a result of [a supervisor]'s hostile behavior" and "[t]he Court is left to infer that each act was discriminatory . . . simply based on the fact' that he is over sixty"). To sustain a hostile work environment claim, the plaintiff must prove intimidating and insulting conduct by the employer that is both discriminatory and severe or pervasive. See Baloch, 550 F.3d at 1201; Golden, 266 F. Supp. 3d at 226. Moore has shown neither. He therefore has not met his burden to establish the existence of a hostile work environment based on his age. The lack of specific allegations of abuse or references to age instead support HUD's motion for summary judgment.

\*     \*     \*

Moore submitted his motion for summary judgment on October 27, 2017 with the emails quoted above attached as exhibits. At that time, he was aware of the standard of evidence required to survive a motion for summary judgment.[5] Moore knew and acknowledged that he was behind in his training. Moore Dep. at 78:2–3 ("Q. And you told us that you were behind in the training? A. Yes."). And while the emails do demonstrate that Patel and other supervisors were "putting pressure" on Moore to complete training, they do not reflect the severe and pervasive harassment, ridicule, or insult required to support a hostile work environment claim. Baloch, 550 F.3d at 1201. Nor do they mention Moore's age as a reason for his acknowledged slow progress. See Golden,

---

[5] This Circuit requires district courts to inform pro se litigants facing summary judgment of the potential consequences with a "Fox–Neal" order. See Order [ECF No. 23] at 1 (citing Fox v. Strickland, 837 F.2d 507 (D.C. Cir. 1988), and Neal v. Kelley, 963 F.2d 453 (D.C. Cir. 1992)). This order informs non-moving parties of the standards of evidence required to survive a summary judgment motion. Id. at 2 ("[S]imple allegations that the moving party's affidavits are incorrect are not sufficient."). Moore had already received a Fox–Neal order from this Court on August 23, 2015 after HUD's first motion for summary judgment, id. at 3, and he acknowledged this order in his Motion for Entry of Judgment, see Mot. for Entry of J. at n.5. Thus, although Moore's deposition testimony suggests that he thought he would have an opportunity to present more specific evidence at trial, see Moore Dep. at 85:21–86:8, this expectation was contrary to the Court's explicit instructions.

17

266 F. Supp. 3d at 286.  Without more evidence of hostility, and without some nexus between the pressuring emails and Moore's age, a reasonable jury could not find for Moore on his claim of hostile work environment in violation of the ADEA.  Moore has therefore failed to demonstrate the existence of any severe or pervasive hostility, age-based or otherwise, and has failed to support his motion for summary judgment.  The absence of any evidence of severe and pervasive abuse, or abuse related to Moore's age, instead supports HUD's cross-motion for summary judgment.

## CONCLUSION

For the reasons explained above, the Court will deny plaintiff's motion for summary judgment and will grant defendant's cross-motion for summary judgment.  A separate order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: August 24, 2018